## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### BARRETT V. FORNEY.

#### JULY 8th, 1886.

1.—SPECIFIC PERFORMANCE—*Parol contract.*—Though specific performance of parol contract for sale of land is not decreed *ex debito justitiæ*, but in exercise of sound judicial discretion under the circumstances of the case; yet it will always be decreed when the contract is certain and definite in terms and clearly proved, when the part performance was pursuant to the contract, and the contract has been so far performed that a refusal of full performance would operate a fraud upon the party and place him in a situation not admitting of compensation in damages. · In such a case, equity will not allow a statute made to prevent fraud to work a fraud. *Wright* v. *Pucket*, 22 Gratt. 370.

2. IDEM—*Case at bar.*—B. & Co. and F. jointly purchased and received conveyance of land for $6,000; whereof F. paid $1,400, and B. & Co. $100, cash payment. Then F., by parol contract, bought of B. & Co. his interest for $1,500, paid in hand, and F.'s assumption to pay balance of purchase money, which F. paid, and was left in actual and exclusive possession for twelve years, during which time he made permanent improvements at cost of $6,000; and then sued for specific performance.

HELD :

       F. should be decreed specific performance of this parol contract against B. & Co.

Appeal from decree of circuit court of Wythe county, rendered March, 1885, in the cause wherein D. S. Forney and Thomas Baumgardner were plaintiffs, and John B. Barrett, in

his own right, and as trustee for the separate use of Rebecca H. Barrett, his wife, doing business in both characters, in the name of J. B. Barrett & Co., were defendants.

The purpose of the suit was to have specific performance of a parol contract for the sale of one-half of a tract of land conveyed to J. B. Barrett & Co. and D. S. Forney, by C. H. Allison. The decree was in favor of Forney, and J. B. Barrett & Co. obtained an appeal and *supersedeas.*

Opinion states the case.

*J. W. Caldwell* and *F. S. Blair,* for the appellants.

1. Specific enforcement in equity is wholly discretionary and strictly conditional on the entire satisfaction of the court in each particular case. 2. The contract in question must clearly appear to have been *actually concluded;* 3, and *fully completed* in all its terms; 4, and *certain and definite* in all its terms; 5, and in all respects *clearly and fully proved;* 6, and be in all respects *fair and reasonable, alike in itself, and in the circumstances under which it was made;* 7, and plaintiff's conduct free of every *"inequity,"* *"unscrupulous practice,"* or *"trickery"* in obtaining it or using it; 8, and from laches in enforcing it; 9, and *he must have performed,* or be in readiness to perform on his part; 10, and unless the contract be in writing, he must have been misled by it into such acts on his part, as in themselves import *some* such contract, and put him in a position which to leave without remedy, would be to make the statute of frauds work a fraud, and, yet, is incapable of remedy by compensation or otherwise, than by a specific enforcement of the contract. 11. Accordingly, *payment,* even of the *whole price,* will not make a case; 12, nor *possession,* unless it be (1) *delivered by vendor,* or taken *with his consent,* (2) *exclusive of vendor from its commencement,* and (3) *not reasonably capable of reference*

*to any other right;* 13, nor *improvement,* unless they be (1) made with knowledge of vendor, (2) *solely on the faith* of the contract, (3) incapable of other reasonable explanation, (4) *permanently beneficial,* (5) of a cost in excess of the value of vendee's possession, and (6) incapable of compensation otherwise than by specific performance; 14, nor, in short, any other fact or facts, without or with any or all of the foregoing, unless the result be, on the whole, to establish satisfactorily *two* distinct points, *each indispensable,* (1) a situation into which plaintiff has been brought by reliance on a parol contract with defendant, which the latter has since repudiated; and (2) an absence of all means except a specific enforcement of this contract to prevent the fraud which this repudiation must else be allowed to accomplish.

Can it be doubted that to go beyond this, is, in effect, to repeal judicially the statute of frauds? Pom. on Con., sections 35–46, 58, 136, 154–7, 159,–61, 175–84, 267, 323–38; *Stearns* v. *Beckham,* 31 Gratt. 379; Waterman on Spec. Perf., sections 132–8, 141, 146, 152, 265, 451 ; Fry on Spec. Perf., sections 164, 205–222, 227, 241; *Wright* v. *Pucket,* 22 Gratt. 370; *Pierce* v. *Catron,* 23 Gratt. 588; *Anthony* v. *Leftwich,* 3 Rand. 238; *McComas* v. *Easley,* 21 Gratt. 29; *Broughton* v. *Coffer,* 18 Gratt. 184; *Willard* v. *Taylor,* 8 Wall. 557; *Marble Co.* v. *Ripley,* 10 Wall. 339; 1 Sto. Eq. Jur., sections 760, 787; 2 Minor's Insts.; 1 Lead. Cas. Eq.; *Lester* v. *Lester,* 28 Gratt. 737; *Hart* v. *Wooldridge,* 6 Rand. 605; *Jackson* v. *Outright,* 5 Munf. 363; Freeman on Co-tenancy, 275–9, 322.

The foregoing propositions and authorities will avail, it is hoped, in connection with the facts in the record, to fix on the decree below each of the errors assigned in the petition. And to these may now be added a further assignment. That decree requires J. B. Barrett to convey, not only his own share in "Rich Hill," but that also held by him as trustee to the separate

use of Rebecca H. Barrett, although there is in the record no proof whatever, nor even an allegation, that *she* ever in any sufficient manner, authorized her interest to be embraced in the alleged sale to Forney. It is idle to attempt to excuse this by the plea that J. B. Barrett was in the habit of assuming to act for her without special authority on all similar occasions. This would be to bind *one*, and that a *feme covert*, by *another's* acts. There is not in the entire record even a pretence that she had ever given her sanction to the alleged habit. And if she had, can this warrant a court of equity, at the suit of such a plaintiff as this case presents, in taking from a *feme covert*, herself actually ignorant of the transaction, in order to give to him, a valuable interest in land vested in her by an undisputably fair conveyance?

*Ro. Crockett* and *James A. Walker*, for the appellees.

First. The proof in this case shows clearly that the appellants, J. B. Barrett & Co., sold an undivided moiety of the tract of land known as "Rich Hill" to the appellee, D. S. Forney, by a verbal agreement which was certain and definite in its terms; that the vendee complied fully with the terms of the contract on his part, and that the appellee is entitled to a conveyance.

Second. The proof further shows that immediately after the verbal contract of sale was made, the appellee took, and has ever since (a period of twelve years) held, exclusive and undisturbed possession of the land, made valuable improvements thereon, and paid the agreed price; that the appellants, during all that time, have kept, and still keep, the purchase money; that they have exercised no acts of ownership, asserted no right or claim to the land, and have contributed nothing to the improvements or taxes. Under these circumstances the

Argument.

appellee has acquired a full and equitable title to the moiety of the appellants, which the court will enforce by compelling the vendor to make a conveyance of the legal title. *Rhea* v. *Jordan*, 28 Gratt. 678, 682–3.

Third. The one undivided moiety of "Rich Hill" was purchased by and conveyed to a partnership consisting of J. B. Barrett, in his own right, and J. B. Barrett, trustee for Rebecca H. Barrett, his wife. J. B. Barrett was the sole and only member of the firm acting in his own right and as trustee. His wife was not *a* member of the firm, and he was the sole acting partner who transacted all the business of the firm. The entire legal title to the moiety of "Rich Hill," owned by J. B. Barrett & Co., was and is solely in him, partly in his own right and partly as trustee. "The sale being within the scope of the partnership, the partner who made it was the agent for the partnership, which became bound by a valid contract made by the agent." *Brooke* v. *Washington*, 8 Gratt. 256.

Fourth. "Partnership real estate is to be considered to every intent as personal property, not only as between the members of the firm respectively and their creditors, but also as between the surviving partner and the representatives of the deceased partner." *Pierce* v. *Trigg*, 10 Leigh, 422–3. "A widow is not dowable in partnership lands." *Pierce* · v. *Trigg*, 10 Leigh, 422–3; *Wheatley* v. *Calhoun*, 12 Leigh, 272–3.

Mrs. Rebecca H. Barrett is not a member of the firm of J. B. Barrett & Co., and has no interest in the land; but if she were a member of that firm, she is bound by the contract of sale made by her co-partner and agent, J. B. Barrett. Her interest in the partnership real estate would be "to all intents personal property," and a court of equity would compel her to convey as if she were a *feme sole*.

HINTON, J., delivered the opinion of the court.

This is a suit in equity to enforce the specific performance of a verbal contract for the sale of real estate. The material facts, omitting all mere minor details of the case, may be briefly stated as follows:

In October, 1872, the appellee, Forney, and the partnership of J. B. Barrett & Co , composed of J. B. Barrett, and J. B. Barrett, trustee for his wife, Rebecca H. Barrett, purchased of one C. H. Allison, a tract of land, in the county of Pulaski, known as "Rich Hill," for the sum of $6,000, and received from him a conveyance for the same, in which the vendor's lien is expressly retained. The purchase seems to have been made with a view to operate it in raising iron ore and manufacturing iron, and ultimately selling the land perhaps for a profit.

Upon this purchase, Forney had already made the cash payment of $1,500, less the trifling sum of $100, furnished by Barrett, and had expended several hundreds of dollars in improvements, when he became satisfied that J. B. Barrett, the active member of the firm, did not intend to pay anything towards the next instalment of purchase money, and that he, Forney, would have to shoulder that as well as the other expenses necessary for further developing the property. Disgusted with the condition of affairs, and no doubt anxious to acquire the sole ownership of the property, Forney made one or more propositions to Barrett to sell or buy. One of these propositions of sale Barrett accepted, and afterwards, as the record shows, with a full knowledge of his rights, relinquished, when Forney became the purchaser.

By the terms of this verbal contract of purchase, construed in the light of the acts of the parties, Forney was to give Barrett & Co., $1,500 for their interest in the property, and to assume the payment of the whole purchase money to Allison.

This sum of $1,500, Forney paid upon the spot by a draft for $1,050, that being the amount to which Barrett was entitled after deducting the sum of $450, due from him to Forney on some admitted account.

Upon the receipt of this draft Barrett immediately left the office of Wm. H. Bolling, where the agreement had been made, saying to Judge Bolling, who was acting as counsel for Forney, that he would call at his office and execute it, then take it down to his wife and after she had executed it, would return it to him. It being suggested at the time, that there was a defect in the certificate of the officer who took the acknowledgment of Mrs. Allison, to the deed from Allison and wife to Forney and Barrett & Co., and that Forney had just bought Barrett & Co. out, Judge Bolling was also instructed to prepare a deed conveying the land from Allison and wife to Forney alone.

This last mentioned deed was promptly executed by Allison and wife and delivered to Forney, but the deed from Barrett has never been executed; and although he has been frequently pressed to execute it, he has always put off its execution upon one pretext or another. In the meanwhile, he has carefully held on to the money which Forney gave him for the land.

During all this time Forney has been in actual and exclusive possession of the property, and has expended large sums, amounting in the aggregate to probably as much as six thousand dollars, in erecting buildings, putting up the forge, and in opening and developing the iron deposits on the place.

Upon this state of facts, the circuit court decreed the specific execution of the contract of sale, and required Barrett to make to Forney a good and sufficient deed for the property.

The only question we have to consider, therefore, is, whether, under the circumstances of the case, that decree ought to be

allowed to stand. It may be generally observed that the remedy of the specific performance of contracts afforded by courts of equity is purely equitable in its character, and is only used as a means by which the ends of justice may be more surely attained than it could possibly be by its legal substitute of damages.

The granting of this equitable remedy, however, is not a matter of absolute right, but of discretion; not, indeed, of an arbitrary and capricious discretion, depending upon the mere pleasure of the court, but of a sound judicial discretion, controlled by the established principles of equity and exercised upon a careful consideration of all the circumstances of each particular case. While, therefore, no positive rule can be laid down by which the action of the court can be determined in all cases, it may be stated as a general rule that specific relief will be usually granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld where, from a like view, it appears that it will produce hardship or injustice to either of the parties. *Seymour* v. *Delaney,* 6 Johnson Chy. 222; *Willard* v. *Taylor,* 8 Wall. 504; 3 Pomeroy's Eq. Juris. sec. 1404.

But to approach a little nearer the case in hand. It is a principle deeply rooted in the jurisprudence of England, and transplanted along with it into the soil of this country, that equity never suffers a statute, enacted for the prevention of fraud, to be used as an instrument for its accomplishment; and so, in all cases, where courts of equity allow acts of part performance of verbal contracts to avoid the statute of frauds, they always proceed upon the ground that it is a virtual fraud upon the plaintiff to allow the defendant to set up the statute as a bar to the fulfillment of his agreement. Although, therefore, according to the terms of the statute there is no contract,

the courts of equity treat the statute as uplifted, and fasten upon the wrong-doer a personal obligation to do exactly what he has verbally agreed to do, and, if necessary, compels him to hold the legal title to the subject matter in trust for the plaintiff, and to consummate his own duty and the other's right by a conveyance. 2 Pomeroy's Eq. sec. 867, and note; *Lester* v. *Foxcroft*, Lead. Cas. in Eq. Vol. I, pt. 2, p. 1027, and notes; *Mundy* v. *Jolliffe*, 5 My. & Cr. 177.

In all of these cases, as was said by this court in *Wright* v. *Pucket*, the parol agreement relied on must be certain and definite in its terms. The acts proved in part performance must be referable to the agreement proved; and the agreement must have been so far executed that a failure to enforce full execution would operate as a fraud upon the party complaining and place him in a situation which does not lie in compensation. *Wright* v. *Pucket*, 22 Gratt. 374; *Pierce's Heirs* v. *Catron's Heirs*, 23 Id. 588; *S. V. R. R. Co.* v. *Lewis*, 76 Va. R. 833.

Now, testing this case by these principles, we think that it is clearly one which calls for a specific performance of the contract. Indeed, we think it may be said in this case, as this court said in *Rhea* v. *Jordan*, 28 Gratt. 682: "The certainty of the terms of the parol agreement in this case, the long lapse of time during which actual and exclusive possession was held under it, the number and costliness of the improvements erected on the faith of it, and the full payment of the purchase money, are concurring circumstances which render this a peculiarly strong case for specific execution." Here there is no lack of certainty or definiteness as to the terms of the parol agreement, if what passed between the parties be viewed in the light of the contemporaneous acts of these parties; there has been possession by Forney actual, long and exclusive, *and not joint;* and during this time valuable improvements have been put on the property, upon the faith of the agreement; and the

specific execution of the .contract will alone be adequate and complete justice; and, finally, there was full payment of the purchase money by the vendor, which, although it is not regarded as an act of specific performance, was an item in the contract, and is an evidence of his purpose to carry out all the stipulations on his part; and there remains, therefore, literaly nothing to be done but for the vendor to release the legal title to the vendee, who already has the equitable title, to complete the execution of the contract. *Rhea* v. *Jordan, supra,* 3 Pomeroy's Eq. secs. 1401, 1409, and notes.

As to the various objections which have been made to the decree, it is simply necessary for us to remark, that the most of them have been answered by our statement of the facts and the course of the opinion, which completely exclude the idea that there was any other terms in the contract than those mentioned, while they only seem to us to be of sufficient importance to require us to say that they were carefully considered before they were rejected.

Our conclusion is that the decree of the circuit court of Wythe county is plainly right, and must be affirmed.

DECREE AFFIRMED.