## Staunton

OSCAR A. PURCELL v. LORETTO WREN PURCELL,
EXECUTRIX, ETC.

September 8, 1948.

Record No. 3373.

Present, All the Justices.

*Allen & Allen* and *Hunter W. Martin*, for the plaintiff in error.

*W. Griffith Purcell*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Oscar A. Purcell filed his declaration *in assumpsit* against Loretto Wren Purcell, executrix of the last will and testament of James M. Purcell, deceased, alleging a certain contract between himself on the one hand and his deceased brother, James M. Purcell, on the other, whereby James agreed to make monthly payments to him of $60 each to cover the cost and expense of maintaining their sister, Mary. This action is to recover for fifteen payments alleged to have been in default at the time of the death of James.

The case was tried before a jury upon instructions to which there was no objection or exception and a verdict in favor of the defendant resulted. The court refused to disturb the verdict.

The single question involved upon this writ of error is whether or not there was a contract between Oscar A. Purcell and his brother, James M. Purcell. The executrix, who is the widow of James M. Purcell, contends that no contract existed between the brothers.

The facts may be stated thus: Oscar A. Purcell and James M. Purcell, now deceased, were brothers, Mary A. Purcell was their sister, and all were unmarried. Upon the death of their mother the two brothers provided a home at 402 North Sheppard street, in Richmond, for themselves and their sister. Some time later Oscar moved to Washington, D. C.

In 1936 James married Miss Loretto Wren, and the sister, Mary, made her home with James and his wife. Later they removed to a home on Hanover avenue in Richmond. In a short time friction arose between Loretto, the wife of James, and his sister, Mary. We find on February 1, 1938, Loretto wrote Oscar who lived in Washington that, "It is just impossible for the two of us to get along. She gets on my nerves and I know I get on hers."

From that time the unfortunate condition grew worse. James wrote his brother, Oscar, that something would have to be done about it as matters were getting increasingly

worse all the time. He and Loretto both tried to induce Oscar to take their sister, Mary, to live with him. They wrote Oscar that unless he did this Mary's continued presence in the home of James and Loretto would break up their marriage.

Oscar was a bachelor and lived in a single room in Washington. To provide for his sister it was necessary for him to make arrangements to get an apartment, and in order to save the marriage of James and Loretto, Oscar agreed to take Mary with him to Washington. As an inducement for Oscar to take Mary, James wrote Oscar a letter, using in part this language: "You mentioned in your letter about need $100 at once to start. You did not make it clear to me whether or not that was in addition to the $60-65 you would need each month." James also stated in this letter, "I have to have a complete and clear understanding of what we are trying to do and what it is going to cost."

On April 1, 1938, James wrote Oscar, "I told you in Washington that I would give up to that amount, $60-65, and you were to go ahead and make whatever arrangements necessary. Don't you think I am having a bed of roses either." Other leters passed between them and in June, 1938, Mary moved to Washington and made her home with Oscar in the apartment which he provided.

Mary has not been able to work, and in addition to the usual expense necessary for her maintenance, Oscar has spent some $2,000 in medical bills for her during the last three or four years.

Immediately after Mary went to live with Oscar, James began making monthly payments to Oscar, sometimes $60 a month and sometimes $65 a month, with regularity, from June, 1938, until the spring of 1943, when his payments became irregular. The last payment was made on March 14, 1946, and on June 30, 1946, he died. Soon after the death of James, his widow, Loretto, qualified as his executrix, and in this action the plaintiff sought to recover the fifteen monthly payments which were in default at the time James died.

In addition to the facts that have just been related in regard to the agreement, there is evidence of certain statements or declarations made by James in his lifetime, testified to by his widow, and also testified to by a witness named Kenneth W. Haas. The substance of those declarations is that the payments were mere voluntary contributions made by James to assist in the support of Mary. Oscar having testified as to the existence of the contract between him and James, and the latter having died, these declarations were admissible under Code, sec. 6209. The question, however, is whether or not they are sufficient to overcome the testimony and documentary evidence offered by the plaintiff.

When Mrs. Purcell testified as to the declarations of her deceased husband, she admitted that she was not familiar with the contract and had never heard him make any statement regarding such an agreement. She even stated that she never took part in any conversations between her husband and Oscar when the latter came to Richmond in regard to taking Mary back to Washington with him, though she had been instrumental in bringing him there for that purpose through her letters to him. She admits that she lacked any knowledge of any agreement. This testimony could not be considered as weakening the clear testimony of the plaintiff, another brother, and the documentary evidence which establish a contract.

The witness, Haas, who also testified as to the declarations of James to the effect that the payments were voluntary donations said he did not know that James had made regular payments to Oscar from 1938 to 1943. He said he understood that the payments were only intermittent. The evidence clearly discloses as a matter of fact that they were not intermittent. Neither of these witnesses has testified that there was no contract. They have not testified to declarations of James to the effect that there was no contract.

The plaintiff testified specifically that he and James had a contract whereby James was to pay him $60 or $65 per month if he would take their sister, Mary, to Washington

and maintain her there. He said he agreed to this arrangement in order to save the marriage of James and his wife, and as we have already stated, he took Mary to Washington in 1938, provided a home for her and she has been with him since that time. The testimony of the plaintiff was corroborated by another brother. This brother, W. E. Purcell, testified as to the efforts made in Washington by Oscar to secure an apartment, and when he returned to Richmond he said, "Well, I reported back when I came to Richmond. Jim said he wanted sister to get an apartment with Oscar and he agreed to pay $65 a month. He said $65 at that time." He was asked the question, "Jim told you that?", and he answered, "Yes, sir." Definite corroboration of this agreement is found in the letters of James, addressed to his brother, Oscar, and which were introduced in the evidence. They show rather conclusively that James agreed to pay the plaintiff $60 or $65 monthly if he would take care of the sister, Mary, and provide her with a home. The plaintiff has fully performed his obligation.

In the light of the foregoing resumé of the evidence there is no reasonable basis for a finding that James made the payments to the plaintiff voluntarily. The evidence does not support such a conclusion. On the contrary, there is ample evidence that such payments were made pursuant to an express agreement between the parties.

The law of the case was settled by the instructions, to which there were no objections. The first instruction set forth the necessary facts upon which a recovery for the plaintiff could have been predicated. It was in this language:

"The court instructs the jury that if they believe from the evidence that the plaintiff, Oscar A. Purcell, and the defendant's decedent, James M. Purcell, entered into an agreement on or about April 1, 1938, whereby said decedent agreed to pay the plaintiff $60.00-$65.00 a month if he would provide a home for their sister, Mary A. Purcell, and personally care for her, and that in pursuance of said agreement, the plaintiff did provide a home for his said sister, in

Washington, D. C., took her there to live with him, and has personally cared for her ever since, the jury will find for the plaintiff and assess his damages at such sum of money as they shall believe from the evidence is justly owing under the agreement, not to exceed, however, fifteen (15) monthly payments."

A counter-instruction was granted at the request of the defendant. It enumerated three elements which would be necessary to be established by the plaintiff before he could recover. It reads thus:

"The court instructs the jury that in order for the plaintiff to recover against the defendant, the plaintiff must prove each and every one of the following elements by a preponderance of evidence: (1) an offer by the decedent, James M. Purcell, to pay to the plaintiff, Oscar A. Purcell, the sum of $60.00 or $65.00 per month, on account of the living expenses of their sister, Mary A. Purcell; and (2) an acceptance by the plaintiff, Oscar A. Purcell, by his promising to take and taking Mary A. Purcell to Washington, to live with him, and there caring for her personally, in accordance with the terms and provisions of said alleged contract; and (3) that the minds of the parties must have met and come together, on every essential element of the arrangement, and that until the minds of the parties are fully met, and an intention to be bound exists on the part of both parties to the alleged contract, no contractual relation or obligation can arise, and no party is bound; and the court further instructs the jury, that if the plaintiff has failed to prove by a preponderance of evidence, any one of these elements, they shall find their verdict for the defendant."

The evidence clearly establishes every requisite for a recovery as defined in these instructions, and the court should have set aside the verdict and entered judgment for the plaintiff for $900.00, as prayed for in the petition.

The judgment is reversed, the verdict set aside and final judgment is now entered in favor of Oscar A. Purcell against the defendant in error for that amount.

*Reversed and final judgment.*