### Richmond

JOSEPHINE C. PENN, ADMINISTRATRIX, ETC.

v.

EUGENE MANNS

June 6, 1980.

Record No. 780922.

Present: All the Justices.

*James W. Haskins* (*Young, Kiser, Haskins, Mann, Gregory & Young,* on brief), for appellant.

*William H. Smith (Garrett, Garrett, Smith & Garrett,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

The personal representative of Walter Lewis Penn, deceased, brought this action in the trial court under Code § 8.01-50 against Eugene Manns for damages for the death of Penn allegedly caused by the wrongful act of Manns. In a jury trial, a verdict was returned in favor of Manns; the court, overruling the plaintiff's motion to set aside the verdict, entered final judgment thereon. The personal representative has appealed, contending that the court erred in failing to strike the defendant's evidence and submit the case to the jury solely on the issue of damages, and in admitting certain evidence. Cross-error assigned by Manns to the trial court's refusal to grant

proffered instructions on assumption of risk, intervening cause, and contributory negligence, and to the court's admission of certain evidence was not argued before us and will not be considered here. We will, of course, review the evidence in the light most favorable to Manns, the prevailing party below.

On March 12, 1977, Penn, age 20 at the time of his death, was shot in the chest in the front yard of his mother's home, where he resided. His mother, Josephine C. Penn, testified that she called to Manns, a friend of Penn's who was present, not to take her son to the hospital in Martinsville, because she would call the rescue squad for that purpose, but Manns drove off with Penn in the car.

Manns's car was subsequently discovered shortly after midnight lying upside down in the middle of Hospital Drive, the private driveway leading to the Martinsville Memorial Hospital entrance. The investigating officer, A. T. Finney, of the Martinsville Police Department, testified that the vehicle had "jumped a curbing" and struck a concrete pillar supporting a light pole, "knocking" the pillar out of the ground. Manns and Penn had been removed from the car to the emergency room of the hospital, where Finney questioned Manns approximately 15 or 20 minutes after arriving at the scene of the accident. Manns was "excited and confused". According to the officer, Manns estimated that he had been driving at 50 to 60 miles per hour on the driveway and had lost control of his car "apparently from speed". Manns indicated to Finney that Penn was "slumped over in a forward position, with his head down". A sign posted near the wrecked automobile on the driveway showed a speed limit of 20 miles per hour.

Penn was moved to a hospital in Roanoke, where he died ten days later. The medical evidence showed that his death resulted from the injuries that he sustained in the automobile accident rather than from the gunshot wound. However, medical evidence also revealed that the bullet fired into Penn's chest had penetrated his lung, causing him to suffer severe loss of blood, a collapsed lung and leakage of air from his lungs. Expert medical testimony additionally affirmed that these conditions might consistently have induced difficulty in breathing, elevated temperature, and fainting.

Irvin R. McGhee, Traffic and Planning Director for the City of Martinsville, testified that he was in charge of setting speed limits throughout the city. He was familiar with Hospital Drive, but had no jurisdiction over it because it was not a public street or alley; he had furnished speed limit signs at the request of the hospital authori-

ties. Although McGhee had not participated in any engineering studies leading to the posting of signs, he estimated the maximum safe speed to be 20 miles per hour in the "S" curves of the driveway, and 25 miles per hour in the "straight-away".

Manns testified that, having heard no contrary instructions, he drove Penn to the hospital at Penn's request. He proceeded by way of Route 58 at approximately 65 miles per hour, increasing his speed, cutting off the heater and rolling down the windows at Penn's insistence, and going "under red lights" within the city limits. When he entered Hospital Drive he was running about 25 miles per hour, but Penn, who was gasping for breath, said, "Drive faster man . . . drive faster". Manns accelerated, and Penn said, "Oh, I'm dying", and fell on Manns's arm, causing Manns to lose control of the car, which wrecked. Manns admitted driving at 45 to 50 miles per hour at the time of the accident. He acknowledged that he was familiar with the driveway and that he saw the speed limit signs posted thereon. He asserted that prior to the accident he had experienced no difficulty in going through the curves in the driveway.

Sergeant James Kendrick, of the Henry County Sheriff's Department, testified that upon arriving at the hospital after the accident to investigate the Penn shooting he found Manns talking to Officer Finney and a State trooper. Over objection, Kendrick testified that Manns, who was "very nervous and upset", told him that the accident occurred when Penn "fell up against him, and he lost control there in that curve that veers to the right". This testimony was offered by Manns under the *res gestae* exception to the hearsay evidence rule.

At the conclusion of the presentation of all the evidence, counsel for plaintiff moved the trial court to instruct the jury to disregard all statements of Penn to which Manns had testified and the testimony of Manns that Penn caused him to wreck the car by falling against him, on the ground that Manns had adduced no corroboration of such testimony as required by Code § 8.01-397.[1] Counsel for Manns opposed the motion as untimely, since Penn had not objected to the admissibility of the evidence when it was presented. The trial court overruled the motion on the ground that the medical evidence fur-

---

[1] Code § 8.01-397 provides in pertinent part:

In an action by or against a person who, from any cause, is incapable of testifying, or by or against the . . . administrator . . . or other representative of the person so incapable of testifying, no judgment . . . shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; . . . .

nished corroboration of Manns's testimony concerning Penn's statements and actions.

■ The principal argument advanced by the administratrix in the court below and on appeal is that Manns, although engaged in an errand of mercy in transporting Penn to the hospital, nevertheless operated his automobile negligently, that this negligence was a proximate cause of the accident, and that Manns was, therefore, liable for damages. We agree that Manns's good faith in rendering emergency assistance to his friend did not immunize him from civil liability. Code § 54-276.9,[2] also known as the "Good Samaritan" statute, expressly excepted the operator of a motor vehicle from the immunity therein provided. Nor does Manns come within the provisions of Code § 46.1-199 exempting from the statutory speed limitations certain police and fire department vehicles and "ambulances when traveling in emergencies outside the corporate limits of cities and towns". Even these exemptions are narrowly restricted.[3] Consequently, no immunity attached to Manns's operation of his automobile at the time of the accident, and the case was not tried on any theory of immunity.

■ We will assume, without deciding, that Manns was negligent

---

[2] Code § 54-276.9 (Repl. Vol. 1978) provided in pertinent part as follows:

(a) Any person who, in good faith, renders emergency care or assistance, without compensation, to any injured person at the scene of an accident, fire, or any life-threatening emergency, or en route therefrom to any hospital, medical clinic or doctor's office, shall not be liable for any civil damages for acts or omissions resulting from the rendering of such care or assistance.

\* \* \*

(d) Nothing contained in this section shall be construed to provide immunity from liability arising out of the operation of a motor vehicle.

[3] Code § 46.1-199(b) (Cum. Supp. 1978) provides:

These exemptions, hereinbefore granted to such a moving vehicle, shall apply only when the operator of such vehicle displays a flashing, blinking or alternating red light and sounds a siren, bell, exhaust whistle, or air horn designed to give automatically intermittent signals, as may be reasonably necessary, and, only when there is in force and effect for such vehicle standard automobile liability insurance covering injury or death to any one person in the sum of at least one hundred thousand dollars in any one [acci-]" dent, and subject to the limit for one person, to a limit of three hundred thousand dollars because of" bodily injury to or death of two or more persons in any one accident, and to a limit of ten thousand dollars because of injury to or destruction of property of others in any one accident. Such exemptions shall not, however, protect the operator of any such vehicle from criminal prosecution for conduct constituting reckless disregard of the safety of persons and property. Nothing in this section shall be construed to release the operator of any such vehicle from civil liability for failure to use reasonable care in such operation.

as a matter of law in driving, by his own admission, at 45 to 50 miles per hour on Hospital Drive, which, though not a public street, contained signs limiting speed to 20 miles per hour. But to impose liability upon Manns, his negligence must have been a proximate cause of the accident. The trial court submitted the questions of negligence and proximate cause to the jury. However, when the court overruled his motion to strike Manns's evidence, counsel for the administratrix did not proffer an instruction affirmatively concluding Manns's negligence as a matter of law but submitting to the jury the question whether such negligence proximately caused the fatal accident. Therefore, if proximate cause was a jury issue, the administratrix cannot complain of Instruction 1, which she proffered after her motion to strike was denied, that submitted both the negligence and proximate cause questions to the jury.

■ Manns testified that Penn's falling upon him caused the accident. The administratrix contends that this testimony should have been stricken because it remained uncorroborated. We do not agree.

The amount of corroboration necessary will vary from case to case, and it need not be conclusive. We outlined the applicable principles in *Brooks* v. *Worthington,* 206 Va. 352, 357, 143 S.E.2d 841, 845 (1965), as follows:

> In considering whether the testimony of an adverse or interested party has been corroborated pursuant to the requirement of the statute, it is not possible to formulate any hard and fast rule, and each case must be decided upon its own facts and circumstances. . . .
>
> It is not necessary that the corroborative evidence should of itself be sufficient to support a verdict, for then there would be no need for the adverse or interested party's testimony to be corroborated. . . . Confirmation is not necessary for that removes all doubt, while corroboration only gives more strength than was had before.
>
> Corroborating evidence is such evidence as tends to confirm and strengthen the testimony of the witness sought to be corroborated—that is, such as tends to show the truth, or the probability of its truth. . . . Such evidence need not emanate from other witnesses but may be furnished by surrounding circumstances adequately established. . . . Nor is it essential that an adverse or interested party's testimony be corroborated on all material points. . . .

In the present case, credible corroboration of Manns's testimony arose from the attendant circumstances. Penn had been severely wounded. His lung had collapsed after having been penetrated by a bullet; he had lost much blood. Medical testimony revealed that higher temperature, labored breathing and dizziness would be consistent with the conditions caused by the gunshot wound. We hold that this evidence sufficiently corroborated Manns's account of the accident, and that the trial court did not err in admitting this crucial part of Manns's testimony.

Moreover, although counsel for the personal representative challenged the ruling of the trial court in admitting Sergeant Kendrick's testimony as to Manns's explanation of the accident, he did not argue this issue before us or request that he be permitted to rely upon his brief. Accordingly, we declined to permit counsel for Manns to argue the issue, which, without objection, we treated as having been waived. This testimony related the prior statement made by Manns soon after the accident that was consistent with his testimony at trial as to the cause of the wreck.

For the reasons assigned, we hold that the trial court did not commit reversible error, and we will affirm the judgment entered upon the jury verdict.

*Affirmed.*