# HELEN VAUGHN

## v.

# DOC SHANK, CO-EXECUTOR OF THE ESTATE OF RUTH M. CONNER, ET AL.

Record No. 931034

June 10, 1994

Present: All the Justices

*Marilyn Ann Solomon*, for appellant.
*Kevin C. Black (Orrin L. French*, on brief), for appellees.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, we consider whether the trial court erred in upholding the report of an assistant commissioner of accounts (the commissioner), who found that Helen Vaughn had failed to prove her claim against the estate of Ruth M. Conner. Vaughn alleged that Conner had agreed orally to transfer certain real property to her in exchange for Vaughn's services.

The record shows that, pursuant to a foster care agreement of the Shenandoah County Board of Public Welfare, Vaughn began

living in the Conner household in 1970 at age 12 and remained there until her marriage in 1976. The testimony given before the commissioner suggests that Vaughn maintained a close, filial relationship with Conner until Conner's death on September 23, 1990.

Conner was survived by her two daughters, Linda Himelright and Nancy L. Plaugher, and her son, William Conner, who were her sole heirs at law. Her last will, executed on October 18, 1988, was probated in the Circuit Court of Shenandoah County. In her will, Conner bequeathed $1,000 to her daughter, Linda, and devised and bequeathed the residue of her estate to the Brethren's Home of Indiana, Incorporated.

In March 1991, Vaughn filed a notice of claim against Conner's estate, for a debt based on an alleged oral contract for the conveyance of a house owned by Conner on Water Street in Woodstock. In her notice of claim, Vaughn stated:

> I herewith make claim on the estate of Ruth M. Conner for services rendered and pursuant to the attached affidavit of indebtedness for the house and lot located at 301 North Water Street in Woodstock, Virginia or its value based on the purchase price of $31,000.

Thereafter, William B. Allen, III, Assistant Commissioner of Accounts for the Circuit Court of Shenandoah County, held a debts-and-demands hearing pursuant to Code §§ 64.1-171 to -180.1, at which Vaughn testified and presented other witnesses.

The evidence at the hearing showed that, at some time before 1986, Conner converted her residence into a nursing home that she operated as the Dutch Haven Home for Adults (Dutch Haven), and that Vaughn was employed at Dutch Haven from the time of its opening until Conner's death in 1990. In 1987, Conner purchased the house on Water Street referred to in Vaughn's notice of claim. Vaughn testified that Conner asked her to live in the Water Street house because it was closer to Dutch Haven than Vaughn's previous residence. Vaughn also stated that Conner told her that the house was purchased for Vaughn and Vaughn's daughter, and that if they liked the house, "it would be [theirs]."

Vaughn testified that, after she and her daughter had lived in the Water Street house for a month and a half, Conner asked Vaughn to leave the house and move into Dutch Haven. Accord-

ing to Vaughn, Conner "needed someone there with CPR" training and wanted Vaughn to be available to work "on call." Vaughn stated that, at that time, Conner "made me a promise, that if I moved in to Dutch Haven[,] she would see that we got the Water Street house. Me and my daughter." According to Vaughn, Conner agreed to fulfill this promise on her expected date of retirement, which was Christmas, 1991.

Vaughn testified that, in 1987, she moved into Dutch Haven, as Conner had requested, and assumed additional duties. Although her previous employment at Dutch Haven had involved a 40-hour week, she now began working 80 to 90 hours per week. She stated that, since she was the only employee qualified to administer cardiopulmonary resuscitation (CPR), she had to remain "on call" at Dutch Haven 24 hours per day, with the exception of a few hours each Friday and Sunday.

Vaughn asserted that, although she performed these additional duties, she continued to be paid for only 40 hours of work per week. She also stated that, once in residence at Dutch Haven, she continued to work the above-described schedule of hours until Conner's death.

Eilene McClelland, who rented the Water Street house from Conner after Vaughn moved to Dutch Haven, testified that Conner told her on two occasions that "the house was purchased for [Conner's] step daughter" and that "the house was bought for Helen and her daughter." Vaughn's daughter, Shannon, age 12, testified that Conner told her "that when she retires that we would be taken care of." According to Shannon, Conner also stated that she would give them the Water Street house, and "that we would have a roof over our head when she died or when she retired."

Finally, William Glenn Sweeney, a resident of Dutch Haven, testified that Vaughn worked in excess of 40 hours per week. Sweeney stated that no other employee worked as many hours as Vaughn, and that, because she lived on the premises, she was available at all times.

After hearing this testimony, the commissioner concluded that the evidence was insufficient to support Vaughn's claim. The trial court heard argument on Vaughn's exceptions, and then entered a decree confirming the commissioner's report.

■ On appeal, we review the trial court's decree confirming the report of a commissioner of accounts pursuant to the same stan-

dard as that governing our review of a decree confirming the report of a commissioner in chancery. *Morris v. United Virginia Bank*, 237 Va. 331, 337-38, 377 S.E.2d 611, 614 (1989). "When a report of a commissioner in chancery who heard evidence ore tenus has been fully approved by the trial court, the decree of the court confirming the report is presumed to be correct and will not be reversed on appeal unless plainly wrong." *Ward v. Harper*, 234 Va. 68, 70, 360 S.E.2d 179, 181 (1987); *see also Seemann v. Seemann*, 233 Va. 290, 293, 355 S.E.2d 884, 886 (1987); *Bailey v. Pioneer Sav. & Loan Ass'n*, 210 Va. 558, 562, 172 S.E.2d 730, 734 (1970).

Vaughn argues that the trial court erred in confirming the commissioner's report and raises three assignments of error. She argues that: (1) she produced sufficient corroboration of the alleged contract to meet the requirements of Code § 8.01-397; (2) her evidence of part performance was sufficient to take the alleged oral contract out of the statute of frauds; and (3) Conner's estate waived its statute of frauds defense by failing to raise it at or prior to the commissioner's hearing. Because we find that Vaughn's evidence provided insufficient corroboration to prove the existence of a contract, we do not reach her second and third assignments of errors.*

Vaughn argues that the evidence presented at the debts-and-demands hearing provided the corroboration required by Code § 8.01-397 and proved an oral contract in which Conner agreed to "see that [Vaughn] got the Water Street house" in exchange for Vaughn's services. In response, the executor of Conner's estate contends that no evidence other than Vaughn's own testimony showed that such a contract was formed. We agree with the executor.

 Since Vaughn seeks to enforce an oral contract allegedly made with a party who is now deceased, we must consider her evidence in accordance with the requirements of corroboration set

---

* Vaughn's arguments before the commissioner and the trial court, as well as her second assignment of error before this Court, make clear that she seeks specific performance of the alleged contract for the conveyance of the Water Street house, rather than compensation for the value of her services. We note, however, that specific performance is purely an equitable remedy (*see Chattin v. Chattin*, 245 Va. 302, 306-07, 427 S.E.2d 347, 350 (1993); *Barrett v. Forney*, 82 Va. 269, 276 (1886)), and Vaughn did not file a bill of complaint in equity; instead, she filed a notice of claim pursuant to Code § 64.1-171. In light of our holding, we need not further address this issue.

forth in Code § 8.01-397. As pertinent to this issue, Code § 8.01-397 provides that, in an action against the executor of an estate, no judgment or decree shall be rendered in favor of an adverse or interested party based on the uncorroborated testimony of such party. The purpose of the statute is to prevent the survivor from prevailing against the decedent's estate solely because the executor has been deprived of the decedent's version of the transaction. *Hereford v. Paytes*, 226 Va. 604, 607-08, 311 S.E.2d 790, 792 (1984); *Haynes v. Glenn*, 197 Va. 746, 752, 91 S.E.2d 433, 437 (1956). Thus, the statute substitutes a requirement that testimony be corroborated in place of the common law rule disqualifying a surviving witness for interest. *Hereford*, 226 Va. at 608, 311 S.E.2d at 792.

To be deemed sufficient under Code § 8.01-397, the corroboration "must at least tend, 'in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings [and] testified to by the [surviving] witness . . . which allegation or issue, if unsupported, *would be fatal to the case.*' " *Hereford*, 226 Va. at 608, 311 S.E.2d at 792 (alteration in original) (citation omitted). The corroborating evidence need not be provided by witnesses, but may be furnished by surrounding circumstances adequately established. *Penn v. Manns*, 221 Va. 88, 93, 267 S.E.2d 126, 130 (1980).

There is no hard and fast rule that determines whether the requirement of corroboration has been met, and each case must be decided upon its own facts and circumstances. *Id.* In a case involving parties between whom a confidential relationship existed at the time of the transaction relied on, a higher degree of corroboration may be required than in other transactions. *Everton v. Askew*, 199 Va. 778, 782, 102 S.E.2d 156, 158 (1958).

In the present case, Code § 8.01-397 requires corroboration of Vaughn's testimony that she entered into the alleged contract with Conner, because that is the sole essential allegation on which her claim is based. *See Hereford*, 226 Va. at 608, 311 S.E.2d at 792. However, upon reviewing the record, we observe that only Vaughn's testimony relates to the issue whether a contract was formed. Although Shannon Vaughn testified that Conner said she would "give us [the] house," and Eilene McClelland stated that Conner told her the Water Street house was purchased for Vaughn and her daughter, this testimony does not show that Vaughn and Conner entered into an agreement that the house

would be transferred in consideration for services, or that Conner recognized an obligation to convey the house to Vaughn pursuant to the terms of their agreement. The testimony of these witnesses is equally consistent with an unenforceable promise on the part of Conner to make Vaughn a gift of the house.

■ Moreover, the surrounding circumstances do not corroborate the existence of a contract between Vaughn and Conner. While Vaughn asserts that Conner promised in 1987 to convey the house to her, there was no evidence that Conner planned or attempted to have a deed drawn. In addition, Conner's will, executed in 1988, shows that Conner contemplated another disposition of her property in the event of her death.

William Sweeney's testimony dealt only with the number of hours that Vaughn worked at Dutch Haven. This testimony provides no corroboration of Vaughn's assertion that she performed the work at Dutch Haven in consideration for Conner's promise to give her the Water Street house.

In previous cases involving claims that a contract to convey real property was breached by a decedent, this Court has considered whether the corroborative evidence was sufficient, pursuant to Code § 8.01-397 and its predecessors, to prove that a binding contract had been formed. In each case where a plaintiff was held entitled to relief, the testimony and evidence of surrounding circumstances provided the kind of clear corroboration that Vaughn's evidence lacks.

For example, in *Timberlake v. Pugh*, 158 Va. 397, 163 S.E. 402 (1932), two witnesses testified that the decedent had asked them to prepare his will conveying certain property to the plaintiff, thus strengthening the plaintiff's testimony that the decedent had promised to will her the same property in return for her housekeeping services. *Id.* at 400-04, 163 S.E. at 403-04. In *Clark v. Atkins*, 188 Va. 668, 51 S.E.2d 222 (1949), Atkins's contention that Clark had promised to leave him all his property if Atkins would help run Clark's business was corroborated by "nine witnesses, most of whom [were] not interested or related to the parties, who testified that Clark had stated to them on various occasions that he expected to leave the meat market business" to Atkins. *Id.* at 673, 51 S.E.2d at 224.

Similarly, in *Everton v. Askew*, 199 Va. at 782-83, 102 S.E.2d at 158-59, the decedent was shown to have told numerous persons that the plaintiff, her husband, had titled his real estate in the

decedent's name in return for her promise to make a will leaving the property to the plaintiff. In *Purcell v. Purcell*, 188 Va. 91, 49 S.E.2d 335 (1948), the plaintiff alleged that the decedent, his brother, had agreed to make monthly payments if the plaintiff would provide a home for their sister. This assertion was corroborated by evidence that the decedent sent payments to the plaintiff for several years, and by the decedent's statements and letters showing that the amounts were paid in return for the plaintiff's assistance. *Id.* at 93-95, 49 S.E.2d at 336-37.

In the present case, Vaughn failed to provide such corroborative evidence of the alleged oral contract; thus, the trial court properly denied her claim against Conner's estate. For these reasons, we will affirm the trial court's decree.

*Affirmed.*