# Richmond

## Virgie L. Everton v. Walter R. Askew.

March 10, 1958.

Record No. 4766.

Present, All the Justices.

The opinion states the case.

*George H. Gray* (*Gordon E. Campbell,* on brief), for the appellant.

*James N. Garrett* (*Allen J. Gordon; Earl W. White,* on brief), for the appellee.

SNEAD, J., delivered the opinion of the court.

Walter R. Askew, appellee, instituted a suit in equity to enforce an alleged parol agreement entered into with his late wife, Ruby Askew, whereby she was to devise to him in fee simple all real estate which he had conveyed or caused to be conveyed to her. Named as defendants in the suit were Virgie L. Everton, appellant and sister of Ruby Askew, and a number of other beneficiaries in the last will and testament of Ruby Askew, dated May 18, 1955, as well as the executor and executrix under the will. The evidence was by depositions, and the chancellor decreed that there was such an agreement and that appellee was entitled to specific performance of the contract. Special commissioners were appointed for the purpose of conveying to appellee all real estate of which Ruby Askew died seized and possessed.

Appellant presents two questions on this appeal:

"1. Has appellee proved by clear and convincing evidence that the contract he alleges was in fact made?

"2. If such a contract was in fact entered into, has there been such performance on the part of appellee as will take it out of the statute of frauds?"

Walter R. Askew and Ruby Askew were married in 1916 and cohabited until her death on August 16, 1955. There were two children born of this union and both died in their infancy. At the time of her death she was 57 years of age and he was 80 years old. They were a congenial and devoted couple.

In August 1935, appellee was the owner of a parcel of land con-

taining 2 acres, more or less, fronting on Great Bridge Boulevard in Norfolk County, which he had purchased February 9, 1932 and on which he, assisted by his wife, conducted a store. Neither owned any other real property at the time. He had formerly owned other property, but she had not.

Appellee's testimony discloses that his wife, Ruby Askew, requested him in the first part of August, 1935 to deed the property to her since she was much younger than he was; that he agreed to do so provided she would execute a will devising the property to him, which she promised to do, and that she executed a will in accordance therewith. It further discloses that the agreement applied to any future property acquired.

The evidence is uncontradicted that she prepared and executed a holographic will in August, 1935, leaving all of her property to appellee. Those who were present at the time of execution besides appellee were Robert T. Askew, Lillian Askew and E. R. Doughtie.

After execution of the will, appellee, by deed dated August 19, 1935, conveyed the "store property" to his wife in fee simple. On April 2, 1936, another parcel was conveyed to Ruby Askew in fee simple by deed from J. C. Commander and wife, and G. W. Commander, widower, which appellee said he purchased and caused to be titled in her name. On October 12, 1936, another lot was conveyed to Ruby Askew in fee simple by deed from Girlene Dixon and her husband, which appellee paid for and caused to be titled in her name. The deeds were duly recorded.

Later on appellee became apprehensive about the sufficiency of the will, and he asked his wife to have an attorney prepare another will. At her request R. C. Barclay, an attorney, drafted a will in which she devised and bequeathed all of her property to appellee in fee simple. It was executed on November 2, 1939, and properly witnessed.

Thereafter three other parcels were deeded to Ruby Askew in fee simple. According to appellee, he paid for the properties, with the single exception that she paid $500 toward the purchase price of one parcel which cost $4,000. He said all six conveyances to her were in conformity with their agreement and that he would not have conveyed or caused to be conveyed these properties had it not been for the agreement which he relied upon then and does now. At her death there were no properties in his name.

Ruby Askew was suffering with a malignancy which caused her

death. While she was hospitalized appellant said she was requested by Ruby Askew to select an attorney of her own choosing to prepare a will for Ruby Askew to execute, she having previously stated that she wanted appellant to have the property after appellee's death. Appellant further said that she was told by testatrix not to mention this will to appellee. Unbeknown to appellee the will was prepared by a local attorney and some changes were directed to be made by testatrix. Whereupon a second will was drawn and taken to her in the hospital. Appellant made the necessary arrangements to have witnesses present. It was executed on May 18, 1955. After a number of bequests of $5 each, appellee was devised and bequeathed a life interest in her estate, and at his death the estate was devised and bequeathed to appellant, in fee simple. Appellant took the will and placed it in a bank safety deposit box where it remained until the death of the testatrix.

On the morning of August 16, 1955, appellee offered for probate the will executed on November 2, 1939, under which, among other things, he was devised her real estate in fee simple, and it was admitted to probate. That afternoon appellant offered the will executed May 18, 1955, and it was admitted to probate. After having been advised that this will was in existence and had been probated, appellee instituted his suit.

Where there is an appeal from a decree based upon evidence by depositions, the weight to be given such a decree is set forth in *Klingstein* v. *Eagle*, 193 Va. 350, 353, 68 S. E. 2d 547. There Mr. Justice Miller, speaking for the court, said: "* * * On the testimony in deposition form, the decree is presumed to be correct and should not be disturbed for lack of proof if the controlling factual conclusions reached are sustained by a fair preponderance of the evidence. *Ashby* v. *Dumouchelle*, 185 Va. 724, 40 S. E. (2d) 493."

In a suit for specific performance of a contract to make a will where part performance is relied upon, it is essential that the parol agreement must be certain and definite in its terms. It is equally essential that the evidence relied upon to establish the agreement and its part performance by the party seeking relief must be clear and convincing. *Taylor* v. *Hopkins*, 196 Va. 571, 575, 84 S. E. 2d 430; *Clay* v. *Clay*, 196 Va. 997, 1005, 86 S. E. 2d 812.

An early leading case on specific performance is *Wright* v. *Pucket*, 22 Gratt. (63 Va.) 370, 374 wherein the following requisites are set forth: "(1) The parol agreement relied on must be certain and definite

in its terms.  (2) The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. (3) The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation." *Adams* v. *Snodgrass,* 175 Va. 1, 7, 8, 7 S. E. 2d 147; *Taylor* v. *Hopkins, supra.*

[3] The evidence must be appraised with these three principles in mind.  Furthermore the testimony of appellee that his deceased wife entered into the alleged agreement with him must be corroborated. Code § 8-286.

As is expressed in *Clay* v. *Clay, supra:* " ' * * The character and sufficiency of the corroboration should be gauged and appraised by the fact sought to be proved.  Just what is necessary to be corroborated * * must not be overlooked. * *.' *Crump* v. *Gilliam,* 190 Va. 935, 941, 59 S. E. (2d) 72, 75.  Whether corroboration exists and the degree and quality required are to be determined by the facts and circumstances of the particular case.  Where a confidential relationship existed between the parties at the time of the transaction relied on, a higher degree of corroboration is required than in ordinary transactions. *Nicholson* v. *Shockey,* 192 Va. 270, 283, 64 S. E. (2d) 813, 821."

The record shows that Ruby Askew was one of those persons who discuss their intimate business affairs freely.  Robert T. Askew, who was present when the 1935 will was executed, testified that she said that appellee "was going to will the property to her" and that she "was going to give him a will for it."  Lillian Askew, who was also present, stated the testatrix remarked that appellee was going to convey his property to her as she was much younger than he was and further because she handled most of the business transactions. E. R. Doughtie said that he heard the will read and it provided that the property conveyed to her by appellee "would go back to him at her death."

Mrs. Frank Hughes stated that she was a friend of and frequently visited the Askews.  Ruby Askew told her that appellee had given everything to her because he was older than she was and that she had promised to make a will leaving the property to him, which she had done.

Rena Moulton testified that she asked Ruby Askew why all the property was titled in her name and her response was that appellee told her she could have the property in her name if she would will

it back to him and that she had made a will and "was looking out for her husband".

In 1950 the Askews went to the law offices of Edwin C. Kellam for the purpose of borrowing money on real estate. Kellam observed from the deed that the property was titled in Ruby Askew's name, and asked them why it was not in their joint names. He stated that her response was that the property had been in her husband's name; that because she was younger than he was she expected to outlive him, and that "it had been put in her name at her request, with the understanding that at her death, if she predeceased her husband, she would leave it to him, and she had made a will to that effect." Kellam suggested that she bring the will to his office in order to see that it was properly drawn. Several days later she brought two wills to Kellam. One was the holographic will and the other was the later will drawn by attorney Barclay. He said that in the will prepared by Barclay everything was left to appellee. He suggested that she destroy the first will since it was superseded by the second.

There were other witnesses who stated Ruby Askew had said on occasions that appellee was to be her sole devisee.

Appellant testified that her sister, Ruby Askew, had stated to her in May 1955 that she wanted her to have the property after appellee's death. She admitted that she was not on speaking terms with her sister from 1929 to 1942, but said they had been close since then. A number of other witnesses testified they had heard Ruby Askew state that she wanted appellant to have her property after appellee's death. These statements were made in 1949 and thereafter, long after the alleged parol agreement and the first and second wills were executed. They are not inconsistent with appellee's proof that a valid agreement was made in 1935 and remained unchanged until May 18, 1955 when her last will was executed. None of appellant's witnesses had heard Ruby Askew make mention of the parol agreement.

A will executed pursuant to an agreement based upon valuable consideration to make a will cannot be revoked by the testator so as to defeat the devise or bequest made by it in accordance with the testator's agreement. The execution of such a will establishes a trust in the property devised or bequeathed pursuant to the agreement and may be enforced in equity against the testator's heirs or those claiming under a subsequent will. *Estate of McLean,* 219 Wis. 222, 262 N. W. 707. See also 3 A. L. R. 172; 57 Am. Jur., Wills § 174, p. 154.

Appellant relies upon *Clay* v. *Clay, supra,* wherein specific per-

formance of an alleged parol agreement was refused. While there is some similarity in the facts of that case to those in the present case, yet the two cases are clearly distinguishable. G. W. Clay and his wife had property titled in their respective names at the time of their marriage and also at the time of her death. Neither Clay nor his wife mentioned at any time before her death that she had executed a will or that there was a contract to make one. We held the evidence was not conclusive that she had executed a will. Furthermore there was no corroboration of Clay's testimony that an oral agreement was entered into with his wife to make a will in consideration of his deed to her. According to him it was a secret arrangement.

In the case at bar, appellee owned all the property until the alleged contract was made and pursuant to it conveyed or caused to be conveyed to his wife the property he then owned and that which was later acquired. At her death all of the real estate was titled in her name. There is ample proof of the execution of the holographic will in August 1935 and the non-holographic will of November 2, 1939, in which Ruby Askew devised her real estate to her husband. The parol agreement to make such a will was corroborated by several credible witnesses. The evidence is clear and convincing that the alleged contract was in fact made.

Having decided the parol agreement was in existence, we must now determine whether there has been such performance on the part of appellee as will take the contract out of the statute of frauds. § 11-2, Code 1950. This question must be answered in the affirmative. Here we have more than part performance. The evidence is clear and convincing that appellee has fully performed the obligations imposed upon him by the agreement. He agreed to convey to his wife the property he then owned, and caused to be conveyed to her all property later acquired, in exchange for her promise to will the property to him. That is precisely what he did. At her death all real estate he had acquired was in her name. There is no way appellee can be put *in statu quo* except by enforcing the agreement.

The three requirements, set forth in *Wright* v. *Pucket, supra,* necessary to take the parol agreement out of the statute of frauds have been fulfilled and the chancellor properly decreed specific performance of the agreement.

The decree appealed from is

*Affirmed.*