Present:  All the Justices

DOROTHY MARIE RUNION, ET AL.

                                      OPINION BY
v.  Record No. 971364        CHIEF JUSTICE HARRY L. CARRICO
                                   June 5, 1998

FRANK HELVESTINE, III, ET AL.

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Roy B. Willett, Judge

In an amended bill of complaint, the plaintiffs, Dorothy Marie Runion and her husband, David L. Runion, sought to enjoin the alienation of Lots A and B, as shown on a certain plat, in which the plaintiffs claimed an interest under an oral contract whereby Dorothy W. Helvestine agreed to make a will devising the plaintiffs Lot A and an option to purchase Lot B.[1]  The chancellor dismissed the amended bill on demurrer, and we awarded the plaintiffs this appeal.  Finding that the chancellor erred, we will reverse.

In addition to Dorothy Helvestine, the amended bill named as defendants her attorneys-in-fact, Frank Helvestine, III, and Eric Frank Helvestine, who are her son and grandson.  Dorothy Runion is the granddaughter of Dorothy Helvestine, the daughter of Frank Helvestine, III, and the sister of Eric Helvestine.

Upon the death of her husband, Frank Helvestine, Jr., in 1986, Dorothy Helvestine became the owner of a tract of land containing approximately 25 acres which includes Lots A and B.  Lot A contains

_____

[1] Dorothy W. Helvestine was still living at the time of the proceedings below, so a bill seeking specific performance of the alleged agreement to make a will would have been inappropriate.

1.86 acres and Dorothy Helvestine's residence, located at 5931

Cotton Hill Road, S.W., in Roanoke County. Lot B contains 2.446

acres and a frame house adjoining Lot A.

The amended bill alleged that Dorothy Helvestine "is currently

not competent" and requested that a guardian ad litem be appointed

to represent her. Jeffrey L. Dorsey, Esquire, was appointed to

perform this function.

The amended bill also alleged as follows:

> After the death of Frank Helvestine, Jr., but before the
> incompetency of Dorothy W. Helvestine, [she] came to the
> Plaintiffs and requested them to move in with her at the
> above stated address in order to take care of her. In
> March, 1986, the Plaintiffs moved in with Dorothy W.
> Helvestine. At that time, they entered into an oral
> contract to make a will whereby if the Plaintiffs
> provided the day-to-day care for Dorothy W. Helvestine as
> long as possible, she would will to them the house and
> lot at the address above-stated. The Plaintiffs
> specifically relied upon these representations. Further,
> Defendant, Dorothy W. Helvestine, also stated that in
> addition to devising them the house and lot aforesaid,
> she would further devise to them an option to purchase a
> second tract of land. In furtherance of this oral
> contract to make a will, Dorothy W. Helvestine directed a
> survey to be made in April, 1991, a copy of which is
> attached hereto as Exhibit 2. Lot A represents the
> property that Dorothy W. Helvestine contracted to be
> devised by will to the Plaintiffs. Lot B is the property
> that was agreed the Plaintiffs could purchase upon the
> death of Dorothy W. Helvestine from her estate for the
> sum of $35,000.00. This $35,000.00 purchase price was
> agreed to in 1991 and the Plaintiffs were given first
> refusal as to this property upon which representations
> the Plaintiffs relied.

The amended bill alleged further that the plaintiffs

"performed under the contract from March, 1986, to October,

1993, when Dorothy W. Helvestine became so frail and infirm because of advanced age that her care required her to be transferred to the South Roanoke Nursing Home." In addition, the amended bill alleged that "[d]espite the performance on behalf of the Plaintiffs done in reliance on the oral contract to make a will with Dorothy W. Helvestine, the Defendants, Frank Helvestine, III and Eric Helvestine, are denying that any such arrangement ever existed and . . . are taking any and all steps necessary to defeat the oral contract and work a fraud upon the Plaintiffs." Finally, the amended bill alleged that Frank Helvestine, III, had entered into a contract for the sale of Lot B, as shown on Exhibit 2, to Strauss Construction Corporation (hereinafter, Strauss).[2]

The amended bill prayed that the plaintiffs "be granted a permanent injunction preventing the Defendants, Frank Helvestine, III, and Eric Helvestine, from alienating Lots A and B [and] that Frank Helvestine, III, and Eric Helvestine be removed as attorneys-in-fact for Dorothy Helvestine." The bill also prayed that the contract for the sale of Lot B to Strauss "be rescinded as inequitable."

Strauss was permitted to intervene, and it filed a demurrer. Frank Helvestine, III, and Eric Helvestine filed a

---

[2] The copy of the contract attached to the amended bill is signed only by Eric F. Helvestine as attorney-in-fact for Dorothy W.

joint demurrer.  Both demurrers asserted that the amended bill failed to state a cause of action because the terms of the oral contract to make a will devising the plaintiffs an option to purchase Lot B were not clear, certain, and definite. Strauss's demurrer also asserted that the allegations relating to a right of first refusal were not clear, certain, and definite.  (Strauss, Frank Helvestine, III, and Eric Helvestine will be referred to hereinafter as the defendants.)

By order, the chancellor severed all matters relating to Lot B from all other matters in the proceeding and directed the Clerk to establish a new file with respect to that lot. Thereafter, the chancellor sustained the demurrers as they related to Lot B, holding that the plaintiffs had "no enforceable property interest" in the lot.  The chancellor also held that there was "no basis" for the plaintiffs to rescind the contract for the sale of Lot B to Strauss because the plaintiffs "have an adequate remedy at law for any damages they may sustain."[3]

The plaintiffs have assigned two errors:

1.  The trial court erred in not ruling the [plaintiffs'] option to purchase Lot B for $35,000 upon [Dorothy Helvestine's] death is a contract right protectable by the courts.

---

Helvestine.

[3] The chancellor also denied the plaintiffs leave to amend their pleadings with respect to Lot B, but that action is not assigned as error by the plaintiffs.

2. The trial court erred in ruling [the plaintiffs] have an adequate remedy at law for damages and that injunctive relief and rescission of the Strauss real estate sales contract is not available to protect their option to purchase the land.[4]

### Option to Purchase

The Statute of Frauds provides that "[u]nless a . . . contract . . . is in writing and signed by the party to be charged or his agent, no action shall be brought . . . [u]pon any contract for the sale of real estate . . . ." Code § 11-2(6). The defendants agree, however, that an oral contract relating to land, including an oral contract to make a will and an oral option to purchase, is enforceable when there has been partial performance and certain legal requirements are met.

Those requirements are well-established. In Wright v. Pucket, 63 Va. (22 Gratt.) 370 (1872), this Court stated:

> [T]he principles upon which courts of equity have avoided the statute of frauds, upon the ground of part performance of a parol agreement, are now as well settled as any of the acknowledged doctrines of equity jurisprudence. From the numerous decisions on the subject the following principles may be extracted and briefly stated as follows: 1st. The parol agreement relied on must be certain and definite in its terms. 2d. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. 3d. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the

---

[4] Since the plaintiffs do not assign error relating to their claim that they were entitled to a right of first refusal with respect to Lot B, we will not consider that claim.

5

party, and place him in a situation which does not lie in compensation.

Id. at 374; see also Story v. Hargrave, 235 Va. 563, 570, 369 S.E.2d 669, 673 (1988); Woodbridge v. Outland, 212 Va. 157, 160-61, 183 S.E.2d 162, 164-65 (1971); Patton v. Patton, 201 Va. 705, 714-15, 112 S.E.2d 849, 856 (1960); Hill v. Luck, 201 Va. 586, 589-90, 112 S.E.2d 858, 860 (1960); Everton v. Askew, 199 Va. 778, 781-82, 102 S.E.2d 156, 158 (1958); Wright v. Dudley, 189 Va. 448, 455, 53 S.E.2d 29, 32 (1949); Mann v. Mann, 159 Va. 240, 245, 165 S.E. 522, 524 (1932).

Here, the arguments of the defendants focus upon the first two of the Wright v. Pucket requirements, viz., that the oral agreement relied on must be definite in its terms and that the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. The defendants maintain that the plaintiffs' oral agreement relating to the devise of an option to purchase fails to satisfy either requirement.

Strauss argues that "[t]o be enforceable, the terms of an oral contract involving the conveyance of land must be clear, definite, and certain at the time the alleged agreement [is] entered into." Here, Strauss says, when the agreement to devise an option was purportedly made in 1986 it was not definite in its terms because the land to be optioned had not

6

yet been clearly defined and the purchase price had not been determined. Strauss points out that the purchase price and the description of the property were not ascertained until 1991, five years after the agreement was entered into, and it argues that what occurred in 1991 "does not make a legally unenforceable 'agreement' entered into in 1986 an enforceable contract in 1991."

Frank and Eric Helvestine adopt Strauss's argument but also argue that if the option to purchase Lot B was not granted until 1991 when the description and price of the lot were ascertained, the plaintiffs "have a problem" because they had already moved in with Dorothy Helvestine and were caring for her in reliance upon her 1986 promise to devise Lot A. Therefore, their moving in could not have been in reliance upon a promise made in 1991 with respect to Lot B. Hence, Frank and Eric Helvestine conclude, "[p]art performance and reliance were already in place . . . because of the 1986 'agreement' as to Lot A" and "the 1991 option was without any consideration."

We disagree with the defendants. This case was decided on demurrer. "A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly

7

inferred from the facts alleged." <u>Rosillo v. Winters</u>, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988); <u>see</u> <u>also</u> <u>W. S. Carnes, Inc. v. Chesterfield County</u>, 252 Va. 377, 384, 478 S.E.2d 295, 300 (1996).

We are of opinion that when the allegations of the amended bill are fairly read they state a case for an agreement requiring Dorothy Helvestine to do two things in consideration of the plaintiffs' moving in with her and providing her day-to-day care as long as possible, (1) make an outright devise to them of the house and lot located at 5931 Cotton Hill Road, S.W., and (2) devise them an option to purchase a second tract of land. While the terms of the option were not then certain and definite because the land and the price to be paid therefor were not specified, the terms were made certain and definite in 1991 when Lot B was created at Dorothy Helvestine's direction and the parties agreed upon a purchase price of $35,000.

Strauss has not cited, nor have we found, any authority for its contention that, for an oral contract to be enforceable, its terms "must be clear, definite, and certain at the time the alleged agreement [is] entered into" and that nothing occurring later can "make a legally unenforceable 'agreement' . . . an enforceable contract." We think subsequent occurrences can make enforceable an otherwise

8

unenforceable contract, provided the rights of innocent parties without notice have not intervened.

It has yet to be determined whether Strauss occupies the position of an innocent purchaser without notice. Whether Strauss had notice of the plaintiffs' alleged option rights is a matter of defense that was not settled with the sustaining of the defendants' demurrers and remains a question subject to proof in the event of a trial on the merits.

With respect to the argument of Frank and Eric Helvestine that there was no consideration for what they call "the 1991 option," we hold that no additional consideration was necessary. What was done in 1991 merely filled in the details of the 1986 agreement and became part and parcel of the bundle of rights the plaintiffs acquired at the outset in consideration of their moving in with Dorothy Helvestine and providing her day-to-day care as long as possible. That bundle consisted of a promise to devise what became Lot A and a promise to devise an option to purchase what became Lot B, and the plaintiffs' acts of part performance resulted from or were made in pursuance of both those promises.

Even so, the defendants submit, there are no allegations in the amended bill as to time of performance, conditions of exercise, or payment arrangements. However, because the alleged agreement involved the making of a will, the time of

9

performance is implied from the event that would make the will effective, i.e., the death of Dorothy Helvestine.

The defendants do not suggest what conditions of exercise are lacking from the allegations or whether such conditions would relate to the formation of the contract or merely to matters of performance, the latter being non-essential allegations. Townsend v. Stick, 158 F.2d 142, 145 (4th Cir. 1946).

And the defendants are correct in saying that the alleged agreement provides for a purchase price of $35,000 without specifying the terms of payment. But, in such circumstances, the law implies that the purchase price will be paid in cash. See Lacey v. Cardwell, 216 Va. 212, 221, 217 S.E.2d 835, 842 (1975) (authority of agent to offer property privately without specification of terms of payment implies cash sale); see also A.B.C. Auto Parts, Inc. v. Moran, 268 N.E.2d 844, 847 (Mass. 1971) (contract for sale of land silent on payment terms implies agreement to pay cash); Kidd v. Early, 222 S.E.2d 392, 404 (N.C. 1976) (option to purchase real estate not specifying method of payment implies price will be paid in cash).

## Adequate Remedy at Law

As noted previously, the chancellor held that the plaintiffs were not entitled to rescission of the contract for the sale of Lot B to Strauss because the plaintiffs have an

10

adequate remedy at law for any damages they may sustain.  The plaintiffs argue that when a right to acquire an interest in land is involved, money damages are inadequate because there is no substitute for the land itself, and equity will enforce the right in an appropriate proceeding.

The defendants argue, on the other hand, that the plaintiffs do have an adequate remedy at law, although they differ in the measure of damages the plaintiffs may recover. Strauss suggests that the measure is "the reasonable value of the services [the plaintiffs] purportedly provided Dorothy Helvestine" while Frank and Eric Helvestine suggest that the measure is "the difference between the fair market value of Lot B in its present condition, and the $35,000 'option' price."

We agree with the plaintiffs that if they establish an interest in Lot B, an award of damages would not provide an adequate remedy.  In Story v. Hargrave, supra, we reversed an award of $1,000 per month as compensation to a couple who cared for an elderly woman in return for her promise to leave her property to them in her will.  We held that the couple's claim was not compensable in damages and that they were entitled to the benefit of their contract in the form of the transfer of the property to them at the promisor's death.  235 Va. at 569, 369 S.E.2d at 672-73.  In Everton v. Askew, supra,

11

this Court affirmed the enforcement of an oral agreement made by a husband and wife whereby she was to devise to him all real estate he had conveyed to her; instead, she left the property to her sister. We said, "[t]here is no way [the husband] can be put in statu quo except by enforcing the agreement." 199 Va. at 784, 102 S.E.2d at 160. And in Wright v. Dudley, supra, we held that an oral agreement by an elderly woman to make a will devising her real estate to a caretaker in return for the latter's maintenance and support should be specifically enforced. 189 Va. at 458, 53 S.E.2d at 34. We stated: "Contracts of this kind are taken out of the operation of the statute of frauds and enforced in equity because the remedy at law is not adequate . . . ." Id. at 455, 53 S.E.2d at 32.

It does not follow, however, that the plaintiffs are entitled to rescission of the contract for the sale of Lot B to Strauss. They are not parties to that contract; they allege no misconduct on Strauss's part in inducing the contract; the only basis they allege for rescission is that the contract is inequitable — they assert none of the usual grounds for rescission, i.e., fraud, mistake, illegality, disability, concealment, undue influence. See Ferry v. Clarke, 77 Va. 397, 409 (1883).

12

This does not mean that the plaintiffs are without a remedy. The amended bill contains an explicit prayer for a permanent injunction preventing Frank Helvestine, III, and Eric Helvestine, Dorothy Helvestine's attorneys-in-fact, from alienating Lot B. If the plaintiffs prove the allegations of the amended bill and it is determined that Strauss had notice of the plaintiffs' claim to Lot B, the chancellor will have injunctive relief at his disposal to protect the plaintiffs' rights in that lot.

For the reasons assigned, the judgment of the chancellor will be reversed, the plaintiffs' amended bill reinstated, and the cause remanded for a trial on the merits consistent with the views expressed in this opinion.

<u>Reversed and remanded</u>.