COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued at Chesapeake, Virginia


THE MATTAPONI INDIAN TRIBE AND CARL T.
 LONE EAGLE CUSTALOW, ASSISTANT CHIEF

v.    Record No. 2963-98-1

COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF ENVIRONMENTAL QUALITY,
 ex rel. STATE WATER CONTROL BOARD,
 AND THE CITY OF NEWPORT NEWS

OPINION BY
JUDGE ROSEMARIE ANNUNZIATA
FEBRUARY 8, 2000


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Robert W. Curran, Judge

David S. Bailey (David S. Bailey, L.L.C.;
Hope M. Babcock; Jeffrey C. Nelson; Sandra
Franco, Law Student Intern; Stephanie Tai,
Law Student Intern; Institute for Public
Representation, Georgetown University Law
Center, on briefs), for appellants.

Deborah Love Feild, Assistant Attorney
General (Mark L. Earley, Attorney General;
Roger L. Chaffe, Senior Assistant Attorney
General, on brief), for appellee Commonwealth
of Virginia, Department of Environmental
Quality, ex rel. State Water Control Board.

George A. Somerville (James E. Ryan, Jr.;
Matthew M. Farley; M. Scott Hart; Stuart E.
Katz, City Attorney; Allen L. Jackson, Deputy
City Attorney; Mays & Valentine, L.L.P., on
brief), for appellee City of Newport News.

On December 16, 1997, the State Water Control Board

("Board") issued Virginia Water Protection Permit number 93-0902

to the City of Newport News ("City"), as authorized by Code

§ 62.1-44.15:5.  The Mattaponi Indian Tribe, Carl T. Lone Eagle

Custalow, Assistant Chief, filed a notice of appeal to the Circuit Court of the City of Newport News on January 14, 1998. The Commonwealth and the City demurred to the Tribe's appeal, and on August 7, 1998, the circuit court sustained the demurrers on various grounds. A final order dismissing the Tribe's case was entered on November 30, 1998. The Tribe then noted its appeal to this Court.

The Tribe and Chief Custalow ("appellants") raise three issues in this appeal. They are 1) whether appellants have standing to challenge the proposed King William Reservoir water supply project ("Project") under Code § 62.1-44.29; 2) whether appellants sufficiently pled that the Commonwealth breached the 1677 Treaty at Middle Plantation ("Treaty"); and 3) whether appellants sufficiently pled that the Commonwealth has violated Title VI of the federal Civil Rights Act.

BACKGROUND FACTS

In July, 1993, the City applied to the Board for a Virginia Water Protection Permit ("VWPP") for its Project. The King William Reservoir project is a regional undertaking sponsored by a coalition of local governments, including Newport News, Williamsburg and York County, for the purpose of identifying and developing a regional water supply to meet projected needs through the year 2040. Once completed, the reservoir will comprise a 1,526 acre impoundment created by a new dam across Cohoke Creek, a small tributary of the Pamunkey River located between the Pamunkey

- 2 -

and Mattaponi Rivers in King William County.  The project would also entail the construction of a water intake and pumping station to withdraw water from the nearby Mattaponi River and convey it to the reservoir.

Because the dam will be constructed by "the discharge of dredged or fill material" into Cohoke Creek, § 404 of the federal Clean Water Act ("CWA") requires the City, as the lead agency of the coalition governments, to obtain a construction permit from the United States Army Corps of Engineers ("Corps").  See 33 U.S.C. § 1344(a),(d).  Under § 401(a) of the CWA, the Corps may not issue a permit for an activity resulting in a discharge into wetlands unless the state where the discharge takes place certifies that the discharge will comply with "applicable provisions" of the CWA or until the state waives such certification.  See 33 U.S.C. § 1341(a)(1).

The Corps may not issue a permit "if certification has been denied by the [s]tate. . . ."  Id.  Furthermore, under § 401(d) of the CWA, "any effluent limitations and other limitations, and monitoring requirements" that are included in the state's certification "shall become a condition on any Federal license or permit. . . ."  33 U.S.C. § 1341(d).

In Virginia, Code § 62.1-44.15(5) of the State Water Control Law ("SWCL") authorizes the Board to issue certificates for the alteration of the physical, chemical or biological properties of state waters.  The SWCL further designates the VWPP as "the

- 3 -

certification required under Section 401" of the CWA.  Code
§ 62.1-44.15:5(A).  "The Board shall issue a [VWPP] for an
activity requiring § 401 certification if it has determined that
the proposed activity is consistent with the provisions of the
[CWA] and will protect instream beneficial uses."  Code
§ 62.1-44.15:5(B).  "Conditions contained in a [VWPP] may include,
but are not limited to, the volume of water which may be withdrawn
as a part of the permitted activity."  Id.

On December 16, 1997, the Board issued a VWPP to the City.
The VWPP contained a number of "Special Conditions" establishing
various limitations and monitoring requirements for the Project.
Thereafter, the City, appellants, and various other petitioners
appealed the Board's decision.  Both the Board and the City
demurred to appellants' petition for appeal on grounds
substantially similar to those raised before this Court.  At the
parties' request, the circuit court heard oral argument on both
demurrers at the same time, sustaining the demurrers on August 7,
1998 in a document entitled, "Case Under Advisement."  Without
elaborating upon the grounds for its decision, the court wrote
that appellants "lack standing to maintain [their] suit."  The
court entered a final order dismissing appellants' appeal on
September 11, 1998.  This appeal followed.

ANALYSIS

I.   STANDING UNDER CODE § 62.1-44.29

On demurrer, the court need only determine the legal sufficiency of the pleadings and take as true all of the facts alleged by the plaintiff.  See Runion v. Helvestine, 256 Va. 1, 7, 501 S.E.2d 411, 415 (1998); W. S. Carnes, Inc. v. Bd. of Supervisors of Chesterfield County, 252 Va. 377, 384, 478 S.E.2d 295, 300 (1996).

Appellants' claim under Code § 62.1-44.29 is governed by our recent decision in Alliance to Save the Mattaponi, et al. v. Commonwealth of Virginia, ex rel. State Water Control Board, et al., 30 Va. App. 690, 519 S.E.2d 413 (1999).[1]  We held in Alliance that the appellants there lacked standing to appeal the Board's issuance of the VWPP because they failed to satisfy the second prong of the statutory test for Article III standing, viz. an injury to a legally protected interest that is fairly traceable to the defendant and not the result of the independent action of some third party not before the court.[2]  See id. at

_____

[1] In addition to arguing that they have standing pursuant to Code § 62.1-44.29, appellants also contend that they have standing under the Virginia Administrative Process Act ("VAPA"). As we noted in Alliance to Save the Mattaponi, 30 Va. App. at 701 n.7, 519 S.E.2d at 418 n.7, however, the SWCL provides expressly for judicial review of the agency action at issue, and therefore we need not look to the provisions of VAPA in order to determine whether appellants have standing to challenge the Project. Consequently, that question will not be addressed here.

[2] In Alliance, we identified the statute's requirement of harm as 1) an actual or imminent injury which is an invasion of a legally protected interest and which is concrete and

706-07, 519 S.E.2d at 421.  As in Alliance, appellants here cannot establish standing to challenge the Project "because the injuries alleged in their petition for appeal will result from the independent action of the [Army Corps of Engineers], a third party not before the circuit court."  Id. at 702, 519 S.E.2d at 419.  We find the trial court did not err in sustaining the demurrer on this ground.

II.  CLAIM CONCERNING THE TREATY AT MIDDLE PLANTATION

Appellants allege that the Treaty creates a duty on the Commonwealth to protect the Tribe from any encroachments within three miles of the Mattaponi Reservation.  Appellants further allege that by the Board's issuance of the VWPP, the Commonwealth has breached this duty.

The Treaty language cited by appellants in support of their claim reads as follows:

> For prevention of . . . Injuries and evil
> consequences . . . for time to come; It is
> hereby Concluded and Established, That no
> English shall Seat or Plant nearer then
> [sic] Three miles of any Indian Town; and
> whosoever hath made, or shall make any
> Incroachment upon their Land shall be
> removed from thence, and proceeded against
> as by the former Peace made, when the
> Honourable Colonel Francis Morison was
> Governour . . . .

Treaty at Middle Plantation, art. IV (1677), in 4 Early American Indian Documents:  Treaties and Laws, 1607-1789, 82-87 (Alden T.

_____

particularized; 2) an injury fairly traceable to the defendant; and 3) an injury likely to be redressed by a favorable decision

Vaughan and W. Stith Robinson, eds. 1983).  Appellants claim that flooding associated with the Project will inundate a portion of the land described in Article IV and that as a result harm will accrue to their interest in the land established in the Treaty.  They equate flooding with "mak[ing] any Incroachment" as stipulated in Article IV.  Appellees counter that the land described in Article IV was never conveyed to the Tribe and instead constituted a buffer zone between the formerly warring colonists and the Tribe.

We decide this case without resolving the question of whether the Tribe was granted ownership rights to the property in question.  As we held in Alliance to Save the Mattaponi, the issuance of the VWPP by the Board does not constitute an imminent threat or danger to anyone, because, unless the Corps issues a § 404 permit, the Project will never proceed.  See Alliance, 30 Va. App. at 701, 519 S.E.2d at 419.  Thus, if any harm shall accrue to lands in which appellants assert an interest, such harm will arise, if at all, from the acts of a third party at some future time.  See id.  Therefore, we find that appellants have failed to allege an actual violation of property rights, even assuming the claimed rights exist under the Treaty.  Accordingly we affirm the trial court's order sustaining appellees' demurrer on this ground.

### III.  APPELLANTS' CLAIM UNDER TITLE VI

of the court.  See id. at 701-02, 519 S.E.2d at 418-19.

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Appellants allege that the Board receives such federal assistance and that, as a result, the Board is bound by Title VI.  Further, they allege that the Board discriminated against the Tribe, a racially and culturally distinct people, by failing to adequately consider appellants' cultural and religious uses of the Mattaponi River and its tributaries and that by its issuance of the VWPP, the Board violated Title VI.

We find no merit in appellants' Title VI claim.  A party seeking redress under the auspices of Title VI must meet the Article III requirements of standing, and a failure to do so nullifies his claim.  See, e.g., Dekalb County School Dist. v. Schrenko, 109 F.3d 680, 689 (11th Cir. 1997).  As noted earlier, appellants lack Article III standing.  See Alliance to Save the Mattaponi, 30 Va. App. 701-02, 519 S.E.2d at 418-19.  Appellants have thus failed to state a claim in their pleadings that entitles them to redress under Title VI of the Civil Rights Act.

For the foregoing reasons, we affirm the trial court's order sustaining appellees' demurrer.[3]

Affirmed.

---

[3] Because we have resolved the issues in the appeal on the grounds stated, we do not reach the Commonwealth's claims of multifariousness and improper pleading of the federal claims.