## CIRCUIT COURT OF THE CITY OF RICHMOND

Shirley C. Fauntleroy

    v.

Celestine Borden

September 23, 2003

Case No. CH03-924

BY JUDGE MELVIN R. HUGHES, JR.

    This case was tried to the court on September 2, 2003. Upon the completion of all the evidence, the court took the matter under advisement.

    In her Bill of Complaint, plaintiff, Shirley Fauntleroy, alleges that her sister, Emily Davis, agreed that, upon her death, Davis would leave Fauntleroy her home if she would move to Richmond to care for Davis in her waning years. She names the executor of Davis' estate as the defendant and prays, *inter alia*, that the defendant "specifically perform the agreement entered into by Davis and Fauntleroy by making a good and sufficient deed of the property at 4904 Goddin Court, Richmond, Virginia, to Shirley Fauntleroy." By Fauntleroy's testimony and that of the other seven witnesses who testified, Fauntleroy did move to Richmond in 1995, when she took up residence at Davis' home, remaining there until Davis died in March 2003.

    The testimony also revealed that, in August 1995, Davis executed a will wherein she left her entire estate, including her home, to Fauntleroy and Johnny Whiting, Davis and Fauntleroy's brother. However, upon Davis' death, her probated will, dated December 1999, specifically revoked the August 1995 will and left the home to the defendant, Celestine Borden, Davis' step-daughter. The witnesses for both sides agreed that Fauntleroy provided care to Davis but disagreed over the level of care she provided, especially in the later years. The case presents the primary issues of whether any Fauntleroy-Davis parol agreement is enforceable and the admissibility of the decedent's statements concerning any such agreement.

The issue of a parol agreement implicates the statute of frauds. The requirements for the enforceability of a parol agreement are well established in the case law in this Commonwealth. In *Wright v. Puckett*, 63 Va. (22 Gratt.) 370 (1872), the Supreme Court of Virginia stated:

> [T]he principles upon which courts of equity have avoided the statute of frauds, upon the ground of part performance of a parol agreement, are now as well settled as any of the acknowledged doctrines of equity jurisprudence. From the numerous decisions on the subject, the following principles may be extracted and briefly stated as follows: 1st. The parol agreement relied on must be certain and definite in its terms. 2d. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. 3d. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation. Where these three things concur, a court of equity will decree specific execution.

*Id.* at 374; see also *Runion v. Helvestine*, 256 Va. 1, 7-8 (1998); *Story v. Hargrave*, 235 Va. 563, 570 (1988); *Wright v. Dudley*, 189 Va. 448 (1949).

In contending that the agreement is unenforceable because of uncertainty in its terms, the defendant cites the allegations in paragraph 6 of the Bill of Complaint which reads: "she (Davis) would make sure that Fauntleroy wanted for nothing and would give her what she needed." She also cites that Davis named Fauntleroy and Johnny Whiting as equal beneficiaries of her estate in the August 1995 will, only after Fauntleroy had moved to Richmond. There was evidence at trial that Davis had agreed to leave Fauntleroy the house prior to Fauntleroy's moving to Richmond; however, the court need not rely solely on that evidence in deciding whether an enforceable agreement exists and if the agreement is certain as to its terms. In *Runion v. Helvestine, supra*, the Court declared that "subsequent occurrences can make enforceable an otherwise unenforceable contract, provided the rights of innocent parties without notice have not intervened." *Id.* at 11. In more recent decisions, on facts similar to the ones at bar, Virginia courts have followed the *Wright* reasoning, compelling heirs at law to convey property to one who was promised property as a caregiver in return for the caregiver moving in and providing care. *See Story*, 235 Va. 563, *Runion*, 256 Va. 1.

Va. Code § 8.01-397 requires corroboration of statements attributed to an incapable party. Davis is considered an incapable party by virtue of her demise prior to these proceedings. At trial, the plaintiff testified that there was an

agreement between her and Davis, to wit, that Davis would devise to Fauntleroy her house at the time of her death in exchange for Fauntleroy's moving to Richmond and caring for Davis. The plaintiff's testimony was corroborated by two of the plaintiff's witnesses, Jean Earley and Shirley Jackson. Both testified that Davis had told them, individually, that she would devise the house to Fauntleroy in exchange for her providing care. The existence of the parol agreement in the terms above was further corroborated by the testimony of Violette Bluford, a witness for the defendant. Based on this evidence, the court finds that a parol agreement of certain and definite terms existed between the parties. Even if Fauntleroy's move to Richmond had been premised on the arguably uncertain language in paragraph 6 of the Bill of Complaint, Davis' subsequent statements to the witnesses make what may have been an otherwise unenforceable contract enforceable.

The defendant argues that, if there was an agreement, such agreement should fail due to Fauntleroy's imperfect care for Davis. Witnesses for the defendant testified that the care Fauntleroy provided for Davis was sub-par and left much to be desired; however, on cross-examination, none of the defense witnesses testified that the care was so far below an acceptable standard that they felt it necessary to contact Adult Protective Services or any other state or local agency charged with protection of seniors. In fact, none of the witnesses testified that they assisted in Davis' care more than from on a time-to-time, as-convenient basis. The standard set forth in the case law is substantial performance, not perfect or near-perfect performance. While Fauntleroy may not have been the ideal caregiver for Davis at all times, the care Davis received from Fauntleroy was sufficient to satisfy the agreement.

In summary, there was evidence that Fauntleroy moved from Ohio to Richmond in 1995 to care for Davis; that Fauntleroy did stay with and care for Davis from 1995 until Davis' death in 2003; that Fauntleroy saw to Davis' needs on an around-the-clock basis, especially after Davis' condition deteriorated in the last several years of her life; and that, aside from the house, there are very few assets remaining in Davis' estate. These facts are not in dispute. Neither party presented evidence that the parties ever considered any form of compensation other than Fauntleroy's being left Davis' house when Davis died. Based on this evidence, the court finds that to deny Fauntleroy relief would operate a fraud on her and, as there are no other assets within the estate that could adequately compensate Fauntleroy, equity requires that the agreement be enforced by the conveyance of the home to her. As the *Runion* Court discussed, in reversing the trial court's dismissal on demurrer, relying on *Wright*:

> We are of the opinion that, when the allegations of the amended bill are fairly read, they state a case for an agreement requiring Dorothy Helvestine to do two things in consideration of the plaintiff's moving in with her and providing her day-to-day care as long as possible, (1) make an outright devise to them of the house and lot … and (2) devise them an option to purchase the second tract of land.

*Id.* at 7-8.

The circumstances here, like *Runion*, establish a similar entitlement. Accordingly, for the reasons stated herein, the court will grant the relief sought by Fauntleroy.