## CIRCUIT COURT OF AMHERST COUNTY

Clarence Lewis Dawson
and Herley Dawson

    v.

Gregory Thomas,
Co-Executor of
Sallie Rose Quarles, et al.

Case No. CL08007023

By Judge J. Michael Gamble

September 11, 2008

I am writing this letter to rule on the pleas in bar in this case. The pleas in bar are overruled. The defendants assert their pleas in bar on three grounds: judicial estoppel, unclean hands, and lack of standing. The ruling on each of these grounds of the pleas in bar are set forth below.

Under the allegations of the complaint, Clarence Lewis Dawson is a nephew of Sallie Rose Quarles ("Quarles") now deceased. It is alleged that Quarles entered into an oral agreement with Clarence Lewis Dawson and his wife ("the Dawsons") for the Dawsons to care for Quarles, including upkeep of her house, household chores, and care during any sickness. The Dawsons further allege that, in return, Quarles would either convey

or devise to the Dawsons land that contained approximately 11.420 acres together with the home situated thereon. It is further alleged in the complaint that this agreement was entered into in 1985, and pursuant to the agreement the Dawsons performed the contracted services for Quarles during her life. Quarles died in January 2008. Quarles did not either convey the property to the Dawsons or devise the property to them in her will. Accordingly, the Dawsons filed this action to either enforce the agreement or impose a constructive trust on the estate of Quarles.

The defendants are the personal representatives of Quarles. In their pleas in bar and at the evidentiary hearing on the pleas in bar, it was established that the Dawsons filed a Chapter 7 bankruptcy proceeding in October 2005. The Dawsons did not list any contract with Quarles, or unliquidated claim against Quarles, in their bankruptcy petition. The Bankruptcy Court granted the Dawsons a discharge in bankruptcy. In their pleas in bar, the defendants maintain that, at the time of the bankruptcy petition, the Dawsons had an unliquidated claim against Quarles that was an asset of the bankruptcy estate. They maintain that this claim could have been used to pay unsecured creditors of the bankruptcy estate who were not paid.

The defendants plead that the Dawsons are judicially estopped from proceeding in this case because they took affirmative factual positions under oath in the bankruptcy proceedings that they had no contractual claim against Quarles. This is based upon the bankruptcy petition filed by the Dawsons under oath where there was no disclosure of a contract with Quarles. It is also based upon the testimony of the Dawsons at the creditors meeting in the bankruptcy court where they did not disclose any contract with Quarles or claim against Quarles.

Judicial estoppel prevents a party from assuming inconsistent positions with reference to the same facts in the course of a lawsuit or series of suits. *Lofton Ridge, L.L.C. v. Norfolk S. Ry. Co.*, 268 Va. 377, 380-81, 601 S.E.2d 648 (2004). Further, in order for judicial estoppel to apply, the positions sought to be estopped must be factual positions and the parties must be the same in the prior proceeding as the current proceeding. *Lofton Ridge*, 268 Va. at 382. See also *Bentley Funding Group v. S K & R Group*, 269 Va. 315, 326, 609 S.E.2d 49 (2005).

While the position sought to be estopped in the instant case is factual, a contract with Quarles, the parties are not the same in the instant case as in the bankruptcy proceeding. Quarles was never a party to the bankruptcy proceeding. Thus, judicial estoppel cannot be applied in the instant case.

*Bentley Funding Group* arose out of inconsistent claims in Bankruptcy Court. However, in that case, Bentley and the party claiming judicial estoppel in state court, S K & R, jointly petitioned the Bankruptcy Court for approval of the contract in issue. *Bentley Funding Group*, 269 Va. at 326. Thus, the parties in the prior proceedings in Bankruptcy Court were

the same as the parties in the state proceedings. In the instant case, as noted above, the parties were not the same in both proceedings.

The defendants maintain that the Supreme Court has overruled the *Bentley* requirement that there be an identity of parties for judicial estoppel to apply. See *Parson v. Carroll*, 272 Va. 560, 636 S.E.2d 452 (2006). A close reading *of Parson v. Carroll*, however, indicates that the Supreme Court has not overruled *Lofton* and *Bentley* on the requirement of there being an identity of the parties.

The defendants also maintain that the Dawsons are barred by the doctrine of unclean hands. The doctrine of unclean hands is based upon the equitable principle that a person seeking equity must not be guilty himself of any inequitable or wrongful conduct with respect to the transaction or subject matter sued over. *Richards v. Musselman*, 221 Va. 181, 185, n. 1, 267 S.E.2d 164, n. 1 (1980). The Supreme Court, however, has held that the misconduct upon which unclean hands is based must relate directly to the matter in litigation. *Richards*, 221 Va. at 186; *Bond v. Crawford*, 193 Va. 437, 447, 69 S.E.2d 470 (1952).

In the instant case, the alleged misconduct in the bankruptcy proceeding does not relate directly to the matter in litigation. The matter in litigation in this case is whether Quarles made a contract with the Dawsons for personal services that would be paid for by the conveyance or devise of land. In other words, the court must decide whether or not there is a contract between Quarles and the Dawsons. That was not the issue in the bankruptcy proceeding. The issue was whether the Dawsons were entitled to discharge their debts under the bankruptcy laws. That is not related to the matter in this litigation.

Further, as set forth in the standing discussion below, this court finds that the personal services contract between Quarles and the Dawsons was not property of the Chapter 7 bankruptcy estate of the Dawsons. If it is not property, then there was no representation that would constitute unclean hands.

In the third ground of their demurrer, the defendants argue that the Dawsons do not have standing to bring this case. They base this plea in bar on the assertion that the bankruptcy trustee, and not the Dawsons, owns this claim and it is the property of the bankruptcy estate. This argument is based on the fact that the alleged contract between the Dawsons and Quarles was not listed in the bankruptcy petition. Because it was not listed, the Dawsons maintain the bankruptcy trustee can neither assume the contract nor reject it. Thus, they assert it still remains property of the bankruptcy estate subject to the action by the bankruptcy trustee.

Accordingly, the threshold question is whether or not the alleged contract is an asset of the estate. The alleged contract in this case is clearly an executory contract for personal services. Although the term "executory contract" is not defined by the Bankruptcy Code, it generally means a

contract on which performance remains due by both parties to the contract. *In re Clay*, 241 B.R. 534, 537 (N.D. Texas 1999); *In re Tonry*, 724 F.2d 467, 468 (5th Cir. 1984). A contract founded on personal trust and confidence is a personal services contract. *In re Tia Carrere*, 64 B.R. 156, 158 (C.D. Cal. 1986); *In re Noonan*, 17 B.R. 793, 797-98 (S.D. N.Y. 182); *McGuire v. Brown*, 114 Va. 235, 242, 76 S.E. 295 (1912).

The contract alleged in the complaint in this case is clearly a personal services executory contract. At the time of the bankruptcy, significant performance was still required by both the Dawsons and Quarles. Under the allegations, Quarles contracted for the services of the Dawsons based upon personal trust and confidence due to their family relationship to her. Section 541 of the Bankruptcy Code defines the property of the bankruptcy estate. Under § 541(a)(1) all legal and equitable interests of the debtor become property of the estate. However, § 541(a)(6) provides that the property of the estate does not include "earnings from services performed by individual debtor after the commencement of the case." Under § 365(c), the bankruptcy trustee may not assume an executory contract if, under applicable law, the non-debtor party is free to decline performance by the trustee and the non-debtor party does not consent to an assumption or assignment.

Under Virginia law, an executory contract for personal service is not assignable. *Epperson*, 108 Va. at 476.

Courts have generally held that an executory contract does not automatically vest in the bankruptcy estate at the time of filing. *In re Clay*, 241 B.R. at 537; *In re Noonan*, 17 B.R. at 797. Further, it is held that an executory contract for personal services is excluded from the estate pursuant to both § 541(a)(6) and § 365(c) in *In re Carrere*, 64 B.R. at 158; *In re Bofill*, 25 B.R. 550, 552 (S.D. N.Y. 1982); *In re Noonan*, 17 B.R. at 797-98; *In re Tonry*, 724 F.2d at 469.

The substance of the above decisions is that the trustee cannot exclude an executory contract in the estate unless it can be assumed under § 365(c). In the instant case, the trustee could not assume the alleged executory contact because § 365(c)(1)(A) prevents the assumption when the non-debtor party is excused from accepting performance or rendering performance to an entity other than the debtor, unless the non-debtor party consents to the assumption or assignment. Because this is a personal services contract Quarles, the non-debtor party, is not required to consent to either the assumption or assignment. Further, it is clear that Quarles would not consent to such an assumption or assignment as provided under § 365(c) (d). It is clearly the position of her personal representatives that there was no contract. Thus, the court can infer that she would not have assumed the contract.

Accordingly, because the personal services executory contract between the Dawsons and Quarles is not part of the bankruptcy estate, the Dawsons have standing to proceed with this litigation.

September 19, 2008

I am writing this letter to rule on the demurrer of the defendants in this case. In this regard, the demurrer is overruled.

Paragraphs 1 through 7 of the demurrer basically assert that the complaint does not establish an oral contract that was breached, that specific performance is not an appropriate remedy, and that unjust enrichment has not been sufficiently pleaded.

First, paragraphs 2 through 5 of the complaint sufficiently allege an oral contract that was breached. A demurrer tests only the legal sufficiency of a pleading. *W. S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 384, 478 S.E.2d 295 (1996). In *Runion v. Helvestine*, 256 Va. 1, 501 S.E.2d 411 (1998), the Supreme Court considered the allegations in a complaint similar to this case. A review of *Runion* establishes that the allegations in the instant case are legally sufficient to allege an action for breach of oral contract. *Runion*, 256 Va. at 7.

In the demurrer, the defendants also argue that specific performance is not an appropriate remedy. This position is contrary to the decision of the Supreme Court of Virginia in *Everton v. Askew*, 199 Va. 778, 781-82, 102 S.E.2d 156 (1958). In *Everton*, the Supreme Court sets forth the requirements for a specific performance action based upon an oral contract to make a will. *Everton*, 199 Va. at 781-82.

In their demurrer, the defendants also assert that unjust enrichment is not an appropriate remedy. A pleading for unjust enrichment requires that it be alleged that (1) a benefit was inferred; (2) that the person on whom the benefit was inferred knew of the benefit and reasonably should have been expected to pay for the benefit; and (3) that the benefit was accepted and not paid for. *Schmidt v. Household Fin. Corp.*, 276 Va. 108, 116, 661 S.E.2d 834 (2008). The allegations in paragraphs 2 through 5 of the complaint are sufficient to allege unjust enrichment.

The demurrer also alleges that, if there was a contract, it is barred by the Virginia Statute of Frauds because it was a real estate contract and because it is an agreement that is not to be performed within a year. Va. Code § 11-2(6), (8). Under Va. Code § 11-2(6), an action for the enforcement of an unwritten contract to sell real estate may not be brought. However, there is an exception to this statutory provision when the agreement is certain and definite, facts proved refer to, result from, or be made in pursuance of the agreement, and the agreement is so far executed that a refusal for execution would operate as a fraud upon the party. *Runion*, 256 Va. at 6. In this case, there are certainly sufficient allegations to make a factual issue as to whether Va. Code § 11-2(6) prevents the enforcement of the oral contract to convey real estate.

The defendants also argue that Va. Code § 11-2(8) prevents the enforcement of an oral contract because it is not to be performed within a year. This, again, is contrary to the ruling of the Supreme Court. If a contract, by its terms and reasonable construction, can be fully performed by one side within one year, even though it is by an improbable event such as death, the contract is not within the statute and need not be in writing. *Silverman v. Bernot*, 218 Va. 650, 654, 239 S.E.2d 118 (1977). In this case, Mrs. Quarles could have died within one year of the date that the contract was allegedly made. Even though this did not occur, the possibility that it could occur is sufficient to avoid the consequences of Va. Code § 11-2(8).

July 20, 2009

I am writing this letter to furnish my ruling in this case. In this regard, I find in favor of the defendants. In particular, I find that the plaintiffs have not established by the appropriate weight of the evidence that they are entitled to either specific performance or a constructive trust based on unjust enrichment.

Sallie Rose Quarles died in 2005. Her last will and testament devised her estate, including her real estate, to her nephew, Gregory Thomas. The plaintiffs allege that Ms. Quarles entered into an agreement with them in 1985 where she agreed to deed or devise her real estate to them if they would help her with her property, transportation, household chores, and medical issues. Mr. and Mrs. Dawson allege that they furnished these services to her from 1985 until her death and that they are entitled to specific performance of this agreement.

In a suit for specific performance of a contract to make a will, it is necessary that the agreement to make the will and its part performance by the party seeking relief must be proven by clear and convincing evidence. *Taylor v. Hopkins*, 196 Va. 571, 575, 84 S.E.2d 430 (1954); *Clay v. Clay*, 196 Va. 997, 1005, 86 S.E.2d 812 (1955). Further, the following elements must be proven by clear and convincing evidence before a parol agreement to make a will can be enforced by specific performance: (1) the agreement relied upon must be certain and definite in its terms; (2) the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; and (3) the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation that does not lie in compensation. *Everton v. Askew*, 199 Va. 778, 782, 102 S.E.2d 156 (1958); *Wright v. Pucket*, 22 Gratt. (63 Va.) 370, 374 (1872).

In the instant case, there has not been sufficient evidence to establish by clear and convincing proof that there was an agreement by Ms. Quarles to convey or devise Mr. and Mrs. Dawson her real estate at her death. While there was testimony on behalf of Mr. and Mrs. Dawson that Ms.

Quarles intended to convey or devise them her real estate in return for their services, there was equal evidence that she intended to devise this property to Gregory Thomas. Further, there were other significant factors indicating that she intended to devise her real estate to Gregory Thomas. First, she transferred two acres of her property to Mr. and Mrs. Dawson while they were furnishing services. Certainly, this indicates a payment for their services. Also, Mr. and Mrs. Dawson did not speak or object when Ms. Quarles went to see Ronald D. Henderson, an attorney-at-law, about making a deed or will that would devise or convey the real estate to Mr. Dawson and Mr. Thomas in equal shares. Likewise, they did not mention the agreement at the time that the power of attorney was notarized by L. A. Franklin. Accordingly, due to the controverted testimony and factors set forth above, the court cannot find that Mr. and Mrs. Dawson have established an agreement by clear and convincing evidence.

In the alternative, Mr. and Mrs. Dawson sought a recovery on the grounds of unjust enrichment. In order to establish unjust enrichment, it must be established that: (1) a benefit was conferred; (2) that the person on whom the benefit was conferred knew of the benefit and reasonably should have been expected to pay for the benefit; and (3) that the benefit was accepted and not paid for. *Schmidt v. Household Finance Corp.*, 276 Va. 108, 109, 661 S.E.2d 834 (2008). In the instant case, the evidence does not establish that the benefit was not paid for. The fact that two acres of land was conveyed to Mr. and Mrs. Dawson is sufficient to establish that they were paid for any benefit that they conferred on Ms. Quarles. Further, for the reasons set forth above, it is not established that Ms. Quarles should have reasonably known that she was expected to convey or devise the balance of her land at her death for a benefit when she had already conveyed two acres to Mr. and Mrs. Dawson.