531 S.E.2d 50

F.E.

v.

G.F.M.

Record No. 1106–99–2.

Court of Appeals of Virginia,
Richmond.

July 18, 2000.

Patricia M. Brady (K. Scott Miles; Alex R. Gulotta; American Civil Liberties Union of Virginia Foundation; Charlottesville–Albemarle Legal Aid Society, on briefs), Charlottesville, for appellant.

John E. Davidson (McGuire, Woods, Battle & Boothe, LLP, on brief), Charlottesville, for appellee.

Present: ELDER, BRAY and BUMGARDNER, JJ.

ELDER, Judge.

■ F.E. (father) appeals from the dismissal of his challenge to the adoption of his son, J.B., by the child's maternal grandmother, G.F.M. (grandmother). The trial court granted grandmother's demurrer on the ground that the challenge was untimely under Code § 63.1–237, which requires that such challenges be made within six months following entry of the final order of adoption, even if fraud or lack of notice to or personal jurisdiction over any person is shown. On appeal, father contends (1) application of the statute's six-month limitation period violated his due process and equal protection rights under the facts of this case, which include his allegations that grandmother committed extrinsic and intrinsic fraud such that father never received notice of the proceedings and the court never obtained personal jurisdiction over father; and (2) the circuit court erroneously failed to appoint a guardian *ad litem* and to consider the issue of visitation. We hold that application of the time limitation imposed in Code § 63.1–237 was unconstitutional under the facts alleged in father's petition and, therefore, that the circuit court erroneously granted grandmother's demurrer. We also hold the trial court did not err in refusing to act on father's request for visitation and

appointment of a guardian *ad litem* for J.B. because, unless and until the adoption order is set aside, father lacks standing to make such requests. We reverse the ruling of the trial court granting the demurrer, vacate its order of dismissal, and remand for further proceedings consistent with this opinion.[1]

## I.

## BACKGROUND

Because this case involves the granting of a demurrer, we accept as true, for purposes of reviewing this motion only, all facts alleged in the petition.[2] *See* Code § 8.01–273; *Runion v. Helvestine,* 256 Va. 1, 7, 501 S.E.2d 411, 415 (1998). "A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Rosillo v. Winters,* 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988).

In late September 1995, father, his approximately fourteen-month-old son J.B., and the child's biological mother C.B., were involved in an automobile accident in which C.B. was killed and J.B. was seriously injured. For ten months prior to the accident, father, C.B. and J.B. resided together. J.B. had "spent the majority of his life in [the] home" shared by father and C.B. That "household did not include [grandmother

---

1. For purposes of ruling on a demurrer, the court must accept as true the facts alleged in the complaint or petition. *See* Code § 8.01–273; *Runion v. Helvestine,* 256 Va. 1, 7, 501 S.E.2d 411, 415 (1998). In subsequent stages of the proceedings, however, the court, as the finder of fact, remains free to review the evidence independently and to conclude that it does not support the allegations in the complaint or petition.

2. In its order granting the demurrer, the circuit court considered a few additional facts not included in father's petition. Because grandmother posed no objection to the court's consideration of these facts at the trial level, we include these facts on appeal in reviewing the lower court's ruling.

G.F.M.]," C.B.'s mother. The record does not reveal where J.B. and C.B. resided for the first four months of J.B.'s life.

Following the accident, J.B. was hospitalized, and father "stayed at his side ... for several weeks." It was father's understanding that J.B. would require constant medical care following his release from the hospital, and father and grandmother agreed that grandmother would care for J.B. in her home following his release from the hospital.

At the time of the accident, father, a native Spanish speaker, could not read English. After C.B.'s death, father relied on grandmother for assistance in completing paperwork. On October 12, 1995, at grandmother's request, father signed a "Consent to Adoption" form by which he purported to consent to grandmother's adopting J.B. The caption on the form read, "In the matter of an adoption of a child known as [J.B.] ... by [G.F.M., grandmother]." Father signed the consent in grandmother's lawyer's office, in the presence of a notary but without counsel or an interpreter. Father was not aware of the content of the form he signed and relied on grandmother's representations that his execution of the form "was merely to allow [grandmother] to have access to medical information and accompany [J.B.] to appointments."

After father signed the consent form, grandmother petitioned the circuit court to adopt her grandson, J.B., including with her petition the "Consent to Adoption" form executed by father. In her petition, she falsely represented that J.B. had lived in her home "continuously for his whole life" and that J.B.'s mother, C.B., also had resided with grandmother until the time of her death. The court ruled that, pursuant to Code § 63.1–223(E), it was "proper to proceed without the investigations and report required by Section 63.1–223," and by order entered October 24, 1995, it decreed J.B. the adopted child of grandmother.

Other than father's execution of the consent to adoption form, which he could not read, father received no notice of the adoption. He was not served with a copy of the petition or the final order. The order was entered against his wishes.

Following C.B.'s death and J.B.'s release from the hospital, J.B. resided primarily with grandmother, but both before and after entry of the adoption order, father "[saw] and care[d] for [J.B.] several times per week, including overnight visits in [father's] home on weekends."

In February 1997, father remarried in a ceremony held in grandmother's home. Father and his new wife "continued the established pattern of frequent and prolonged visitation with [J.B.] in their home and [grandmother's] home. Some of these visits lasted for two weeks or more, and at least one included a trip out of state."

In February 1998, father and his new wife informed grandmother that they wished to have J.B. live in their household. At that time, grandmother informed father that she had adopted J.B. in October 1995. Grandmother has prevented father from having any additional contact with J.B. since that time and has served father and his wife with trespassing notices to prevent them from coming to her home to see J.B.

On September 24, 1998, father filed a petition to set aside the adoption order, claiming grandmother committed extrinsic and intrinsic fraud, and that application of the six-month statute of limitations to prevent a challenge "based on lack of personal jurisdiction, lack of notice, duress, and fraud" violated his due process and equal protection rights. He sought to have the statute declared unconstitutional as applied to him, to have the adoption order declared void, and to be awarded regular visitation with his son until his parental rights were restored. He also sought appointment of a guardian *ad litem* for his son.

Grandmother filed a demurrer, asserting that the statute was constitutional and barred father from seeking relief. She also contended that father lacked standing to request visitation.

The trial court held that the petition and consent for adoption provided it with jurisdiction under Code § 63.1–220.3(C)(6) to enter the final adoption order. With the passage of more than six months time following that entry, the

court held that Code § 63.1–237 prevented father from attacking the order. It stated expressly, "The court does not see the need to pass upon the constitutionality of the statute," and it did not do so, despite father's repeated requests for consideration of this issue. It also said, "I see nothing . . . preventing the birth father and his wife [from] fil[ing] a petition for the adoption of his birth-son who is now legally the child of the grandparents. It may well be that the best interests of the child would govern the outcome of that action which may or may not be the same outcome that now exists."

Father filed a motion to reconsider, which the court denied.

## II.

## ANALYSIS

## A.

## CONSTITUTIONALITY OF CODE § 63.1–237 AS APPLIED TO FATHER

Code § 63.1–237 provides as follows:

After the expiration of six months from the date of entry of any final order of adoption from which no appeal has been taken to the Court of Appeals, the validity thereof shall not be subject to attack in any proceedings, collateral or direct, for any reason, including but not limited to fraud, duress, failure to give any required notice, failure of any procedural requirement, or lack of jurisdiction over any person, and such order shall be final for all purposes.

This statute roughly tracks the language of the Revised Uniform Adoption Act, except that the Uniform Act provides for a one-year limitation period. *See* Revised Unif. Adoption Act (RUAA) § 15(b) (amended 1971), 9 U.L.A. 203 (1999); *see also* Uniform Adoption Act § 3–707(d) (1994), 9 U.L.A. 97–98 (providing that, without exception, a decree of adoption "is not subject to a challenge begun more than six months after the decree or order is issued"). The commentary accompanying the RUAA "explains that it is designed to impose a very short

statute of limitation" because " '[t]he policy of stability in a family relationship, particularly when a young minor is involved, outweighs the possible loss to a person whose rights are cut off through fraud and ignorance.' " *McKinney v. Ivey,* 287 Ark. 300, 698 S.W.2d 506, 507 (1985) (quoting 9 U.L.A. 48 (1979)).

 Father concedes that literal application of the statute would bar his petition to set aside the adoption. The adoption was effected by order entered October 24, 1995; his petition was filed on September 24, 1998, well outside the six-month limitation period. He contends, however, that application of Code § 63.1–237's limitation period to bar his challenge to the validity of the adoption violated his due process and equal protection rights. We agree that the statute is unconstitutional as applied to the facts of this case.

The due process clauses of the Federal and Virginia Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law.

All actions of the General Assembly are presumed to be constitutional. Thus, courts will declare an enactment unconstitutional only when it clearly is repugnant to some provision of either the state or federal constitution. The party challenging the enactment has the burden of proving its unconstitutionality, and if a reasonable doubt exists as to its constitutionality, the doubt must be resolved in favor of its validity.

Generally, due process is satisfied if an enactment has a "reasonable relation to a proper purpose and [is] neither arbitrary nor discriminatory." Thus, under the general rule, a statute is not violative of due process if it withstands a "rational basis" test. When, however, a statute affects a fundamental right or a suspect classification, its constitutionality will be judged by the "strict scrutiny" test.

*Hess v. Snyder Hunt Corp.,* 240 Va. 49, 52–53, 392 S.E.2d 817, 820 (1990) (citations omitted). When a statute "significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state

interests and is closely tailored to effectuate only those interests." *Zablocki v. Redhail,* 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618 (1978).

On several occasions, the United States Supreme Court has considered a parent's interest in the relationship with his or her child. *See Lehr v. Robertson,* 463 U.S. 248, 256–58, 103 S.Ct. 2985, 2990–91, 77 L.Ed.2d 614 (1983).

> In the vast majority of cases, state law determines the final outcome.... In some cases, however, this Court has held that the Federal Constitution supersedes state law and provides even greater protection for certain *formal* family relationships.... In these cases the court has found that the relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection. "[S]tate intervention to terminate [such a] relationship ... must be accomplished by procedures meeting the requisites of the Due Process Clause."

*Id.* at 256–58, 103 S.Ct. at 2991 (quoting *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982)) (emphasis added) (other citations omitted). " '[T]he interest of parents in their relationship with their children is *sufficiently fundamental* to come within the finite class of liberty interests protected by [the Due Process Clause of] the Fourteenth Amendment.' " *M.L.B. v. S.L.J.,* 519 U.S. 102, 119, 117 S.Ct. 555, 565, 136 L.Ed.2d 473 (1996) (quoting *Santosky,* 455 U.S. at 774, 102 S.Ct. at 1405 (Rehnquist, J., dissenting) (noting that Court was unanimously of Rehnquist's view on this point)) (emphasis added).

The Court also has examined "the extent to which the Constitution affords protection to the relationship between natural parents and children born out of wedlock." *Lehr,* 463 U.S. at 258, 103 S.Ct. at 2991. The Court has drawn a clear distinction between "a mere biological relationship and an actual relationship of parental responsibility." *Id.* at 259–60, 103 S.Ct. at 2992.

> The difference between the developed parent-child relationship ... and the potential relationship ... is both clear and

significant. When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he "act[s] as a father toward his children." ... [T]he mere existence of a biological link does not merit equivalent constitutional protection.

*Id.* at 261, 103 S.Ct. at 2993 (quoting *Caban v. Mohammed,* 441 U.S. 380, 389 n. 7, 392, 99 S.Ct. 1760, 1766 n. 7, 1768, 60 L.Ed.2d 297 (1979)). Therefore, a biological parent who participates in the rearing of his or her child has a fundamental right to continue to participate in that relationship unless the relationship is altered or terminated by due process of law. *See id.; see also McKinney,* 698 S.W.2d at 508; *Wade v. Geren,* 743 P.2d 1070, 1073–74 (Okla.1987) (affirming trial court's ruling that father who had established relationship with child had due process right to notice of grandparents' adoption petition and that grandparents' failure to disclose father's identity and pending paternity action constituted fraud which rendered the adoption decree void, despite statute providing that void decree could not be attacked after one year).

In father's case, based on the facts alleged in his petition to set aside the adoption, father had a fundamental right to have his already-established relationship with his biological child not terminated without due process. Because the limitation period contained in Code § 63.1–237 affected father's fundamental right to maintain that relationship with his son, we evaluate its constitutionality, as applied to the facts of this case, under the "strict scrutiny" test. *See Hess,* 240 Va. at 52–53, 392 S.E.2d at 820. The statute "significantly interferes with the exercise of a fundamental right," and "it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Zablocki,* 434 U.S. at 388, 98 S.Ct. at 682.

We agree that the state has a compelling interest in " '[preserving] stability in a family relationship, particularly when a young minor is involved.' " *McKinney*, 698 S.W.2d at 507. We disagree, however, that application of the six-month statute of limitation under the facts of this case is sufficiently narrowly tailored to achieve the goal of stability while simultaneously preserving father's fundamental right to continue the pre-existing relationship with his biological child. The father's petition to set aside the adoption alleges that the child resided with his mother and father for ten months prior to being injured in a car accident at fourteen months of age. Father remained at his child's bedside throughout the course of his hospitalization. Although father and grandmother agreed that grandmother would take care of the child upon his release from the hospital because he would require constant attention due to his injuries, father did not abandon his relationship with his son. To the contrary, the child routinely resided with father overnight on the weekends, and father "[saw] and care[d] for" the child during the week, as well. When father remarried about one and one-half years later, he and his new wife "continued the established pattern of frequent and prolonged visitation with [J.B.] in their home and [grandmother's] home. Some of these visits lasted for two weeks or more, and at least one included a trip out of state." Under the facts alleged, father was no stranger to his child. Therefore, allowing father to attack the order of adoption more than six months after its entry based on grandmother's alleged fraud, and the resulting lack of notice and personal jurisdiction,[3]

---

3. Although the court may have believed it acquired personal jurisdiction based on father's execution of the Consent to Adoption form, the acquisition of personal jurisdiction is based on the receipt of notice which complies with the Due Process Clause. *See Price v. Price*, 17 Va.App. 105, 112, 435 S.E.2d 652, 657 (1993) (citing *Kulko v. Superior Ct.*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978)). Due process requires " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). In this case, like in

would not have jeopardized the state's compelling interest in maintaining the stability of the family relationship. Grandmother's refusal to allow father any contact with the child likely has been more disruptive than an order setting aside the adoption would have been.

 Assuming without deciding that father had a duty to act diligently to preserve his rights, no evidence indicates that he failed to do so. *Cf. Drummond v. Drummond,* 123 N.M. 727, 945 P.2d 457, 462 (Ct.App.1997) (in applying equitable estoppel to hold that adopting grandparents could not assert statute of limitations defense to bar mother's challenge to adoption, noting that no evidence showed mother did not act diligently in failing to challenge adoption earlier because "there was never a change of living circumstances until after the statute of limitations had run"). He was unable to read English and reasonably relied on grandmother's representations that the purpose of the "Consent to Adoption" form was merely to allow grandmother access to the child's medical records since she would be assuming primary responsibility for the child's medical care. Until grandmother told father of

---

*Armstrong,* father "did not have ... the slightest inkling of the pendency of [the] adoption proceedings." *Id.* at 548, 85 S.Ct. at 1189.

We assume without deciding that father's execution of the Consent to Adoption form, filed by grandmother along with the petition for adoption, constituted an appearance before the court sufficient to permit the court to infer father's receipt of notice and submission to the jurisdiction of the court. Nevertheless, father's petition to set aside alleged that he had no understanding of the content of the form and relied on the representations of grandmother—who could reasonably have been expected to know of the language barrier—that the Consent to Adoption form was merely to facilitate her oversight of the child's medical care. Under these circumstances, execution of the form was not "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Once the court became aware of these allegations, it had a duty to evaluate the adequacy of the notice and jurisdiction. *See In re Rabatin,* 83 Ohio App.3d 836, 615 N.E.2d 1099, 1102 (1992) (holding that mother was "presumed to have had actual notice of the adoption, and to have effectively waived the notice requirement" where she signed a consent to adoption form and the record contained no evidence that she was "unable to read or otherwise could not understand the consent form she signed").

the adoption over two years later, father had no reason to know that his parental rights had been terminated. He and grandmother both continued to care for the child as they had agreed to do prior to the adoption, and no substantive changes occurred in the relationship. *Cf. id.* Grandmother's fraud in misrepresenting to father the effect of the Consent to Adoption form and in misrepresenting to the court the parties' living arrangements prior to the adoption constituted extrinsic and intrinsic fraud sufficient to require the denial of grandmother's demurrer.

In summary, we hold, in regard only to grandmother's demurrer, that application of the six-month statute of limitation to father was unconstitutional and that the adoption decree was void *ab initio* based on grandmother's alleged fraud and the resulting lack of notice to and personal jurisdiction over father. Therefore, the trial court erroneously granted grandmother's demurrer.

## B.

### VISITATION AND APPOINTMENT OF A GUARDIAN *AD LITEM*

 Father also contests the trial court's refusal to grant him visitation and to appoint a guardian *ad litem*. We hold, however, that father lacked standing to make such a request as long as the order of adoption remains in effect; thus, we hold that the trial court did not err in failing to grant visitation. Code § 20–124.1 provides that only a person "with a legitimate interest" has standing to request custody or visitation and that "[a] party with a legitimate interest ... shall not include any person ... whose parental rights have been terminated by court order, either voluntarily or involuntarily." *See also* Code § 63.1–233 (providing that final order of adoption divests birth parents of right to petition for visitation). Therefore, father will not have standing to request visitation unless or until the trial court rules in his favor on the merits by setting aside the adoption order.[4] For these

---

4. Contrary to the statement of the trial court in its letter opinion, this lack of standing would also prevent father from having any meaningful

same reasons, the court had no duty to act on father's request for the appointment of a guardian *ad litem*.

## III.

## CONCLUSION

For these reasons, we reverse the decision of the trial court, vacate its order dismissing father's petition, and remand for further proceedings consistent with this opinion.

*Reversed, vacated and remanded.*

BUMGARDNER, Judge, dissenting.

I respectfully dissent from the majority. I believe the trial court properly sustained the demurrer to the petition.

The father brought his petition under Code § 8.01–428(D). That section preserves the common law "independent action" for obtaining equitable relief from a judgment. *See* Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure* § 11.4, at 479 (3rd ed.1998). The elements of that action are well defined and include " 'the absence of fault or negligence on the part of the [petitioner].' " *Charles v. Precision Tune, Inc.*, 243 Va. 313, 318, 414 S.E.2d 831, 833 (1992) (citation omitted). The father's fault or negligence in signing a document he could not read is apparent from his pleading. Thus, the petition fails to plead sufficient facts to permit his action. *See id.* The demurrer was properly sustained.

---

ability to petition to adopt J.B. *See* Code § 63.1–233 (providing that final order of adoption divests birth parents "of all legal rights and obligations in respect to the child"); *Stanley v. Illinois,* 405 U.S. 645, 647–48, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972) (noting that equal protection violation resulting from Illinois statute providing for automatic termination of parental rights of unwed father on death of mother was not remedied by fact that father had right to petition for adoption of children because Illinois law considered him "a stranger to his children," provided him "no priority in adoption proceedings," and required him "to establish not only that he would be a suitable parent but also that he would be the most suitable of all who might want custody of the children").

I would affirm the trial court and refrain from declaring the statute of limitations unconstitutional.