UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Ortiz and Friedman
Argued by teleconference

CAROL NORMAN DREW

MEMORANDUM OPINION* BY
v.      Record No. 1750-22-1          JUDGE MARY BENNETT MALVEAUX
DECEMBER 28, 2023

ARMOR CORRECTIONAL HEALTH
  SERVICES, INC.

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

Carol Norman Drew, *pro se*.

Taylor D. Brewer (Katherine E. Morley; Moran Reeves & Conn PC,
on brief), for appellee.

Carol Norman Drew appeals an order of the circuit court sustaining the demurrer of Armor

Correctional Health Services, Incorporated ("Armor") and dismissing his complaint. He argues that

the circuit court erred in sustaining Armor's demurrer based on grounds raised by the court but not

raised by Armor. He also contends that the circuit court erred in relying on the strength of the facts

alleged in his complaint instead of only determining whether his complaint stated a legal duty owed

to him. For the following reasons, we affirm the circuit court's ruling.

I.  BACKGROUND

Drew, *pro se*, filed a negligence claim against Armor, the healthcare provider at St.

Brides Correctional Center ("the prison"). In his complaint, Drew, an inmate at the prison,

alleged that Young Dozier, a fellow inmate in his housing unit, exhibited symptoms of

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

COVID-19 on January 18, 2021. The complaint further alleged that Dozier went to the prison's medical unit and told Nurse Coles, an Armor employee,[1] that he was concerned that he might be infected with COVID-19. Dozier's symptoms included dizziness, headache, and fever. Drew asserted that Coles negligently sent Dozier back to Drew's housing area without testing him for COVID-19 or quarantining him. Drew specifically alleged that "Nurse Coles['] decision to send Dozier back to [their housing unit] without a rapid test created a reasonably forseeable [sic] risk of harm to [Drew] and others." Drew further alleged that Coles was acting within the course and scope of her employment, and "[a]s a health care provider [she] should have known that fever, headaches, and dizziness are all symptoms of [C]ovid-19." He alleged that, as a result of his close contact with Dozier, he contracted COVID-19 and suffered from "physical pain, mental anguish, stress, anxiety, loss of taste, [and] loss of smell."

Drew attached two memoranda from the director of the Department of Corrections ("DOC") as exhibits to his complaint. The first memorandum informed inmates that COVID-19 likely was spread through close contact with others. The second memorandum stated that some prisoners at another prison had developed fevers and tested positive for influenza, that DOC was "working with [the Virginia Department of Health] regarding COVID-19 testing," and that the sick inmates had been "quarantined for both their safety and the safety of others." Drew also attached an affidavit from an inmate at the prison Drew was housed in stating that when the other prisoner had displayed symptoms of COVID-19, a nurse had tested him for the virus and had told him that if he tested positive, he would have to be quarantined.

Armor filed a demurrer to Drew's complaint, asserting that the suit was "a medical malpractice action." It argued that Drew failed to state any duty that it owed to him. Armor specifically asserted that Drew failed to allege: (1) "[t]he duty Armor owed [Drew] in connection

---

[1] Coles, also a defendant in the matter, did not make an appearance in the case.

with someone else's diagnosis"; (2) "[t]he basis of any legal duty Armor owed to [Drew] when another person seeks medical care"; (3) "Armor's responsibility in housing incarcerated persons"; and (4) "Armor's legal duty to prevent transmission of COVID-19 in the housing area of a jail, despite [Drew] 'following all safety measures.'"

Drew filed a response to the demurrer, asserting that Coles had a duty to prevent injury to himself because Drew was in reach of Coles's conduct, citing *Quisenberry v. Huntington Ingalls Inc.*, 296 Va. 233 (2018), in support. Drew also filed a motion for leave to amend his complaint. His amended complaint included the new allegations that: (1) "Nurse Coles as a reasonably ordinary prudent person could reasonably apprehend that as a natural and probable consequence of her negligence in sending Dozier back to [the housing unit], [Drew] would receive an injury and thus ordinary care to prevent such injury was a necessary duty"; and (2) "Nurse Coles owed [Drew] and others similarly situated a duty to use ordinary care" which "included keeping Dozier's cohabitants safe by not placing them in a given area of danger."

The circuit court held a hearing on Armor's demurrer.[2] In a letter opinion, the court first found that the case was not a medical malpractice action because it did not meet the definition of malpractice as between a health care provider and a patient, pursuant to Code § 8.01-581.1. It then distinguished the case from *Quisenberry*, finding that "[a]lthough not argued by [Armor], the obvious distinction here is that unlike the employer in *Quisenberry*, who 'created' the hazard of asbestos dust in the workplace, [Armor] did not create either the Covid-19 virus or the

---

[2] The record on appeal does not include a transcript or a statement of facts for this hearing. However, the pleadings and the circuit court's letter opinion provide a sufficient basis upon which to consider the assignment of error presented on appeal. *See* Rule 5A:8(b)(4)(ii) ("When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error *affected by such omission* will not be considered." (emphasis added)); *see also Raintree Homeowners Assoc. v. Jones*, 243 Va. 155, 157 (1992) (holding that the record, based on the pleadings, exhibits, orders of the trial court and the court's letter opinion, was sufficient to permit appellate review without a transcript of the proceedings).

housing arrangements that promoted its transmission." It stated that while "a healthcare provider's duty to a patient arises from a relationship that the provider has assumed between the parties, a general tort duty arises by virtue of the defendant's conduct in creating the hazard." The court sustained Armor's demurrer because COVID-19 was "not a hazard that [Armor] created" and therefore Armor had "no general tort duty to prevent" the transmission of COVID-19 to Drew, who was "not [Armor's] patient." The court also denied Drew's motion to amend, finding that "[t]he pleading adds no facts that would impose a legal duty."

Drew filed a motion to reconsider, arguing that the circuit court erred in requiring him "to go into details of proof to show the existence of a duty for a demurrer." As an exhibit to his motion, Drew attached his written complaint to DOC stating that he had been exposed to other inmates with COVID-19 for an hour prior to the inmates being quarantined. A DOC official responded that "[the prison] will not discuss other inmate medical information with [Drew]" and that "[a]ll moves are approved by the Health Authority." Drew explained in his motion to reconsider that the "Health Authority" is Armor. He then alleged that "[b]ecause [Armor] had to approve all moves at the facility and [Drew] alleged in his Complaint that Dozier was positive for Covid-19, [Armor] had a duty to quarantine Dozier away from [the housing unit] to prevent the spread of Covid-19 in the housing area."

The circuit court denied Drew's motion to reconsider, explaining its decision in a second letter opinion. The court addressed Drew's written complaint to DOC, noting that it was not made a part of Drew's complaint, but that the court had considered it in its ruling on the motion. The court stated that the written complaint did not provide facts demonstrating "that Armor had a duty to ensure that [Drew] was not housed with the infected inmate" because "Armor still did not create the housing arrangement that [Drew] alleges to be the dangerous condition which imposes such a duty." The court noted that "[a]lthough [Armor] may have some approval authority, there

is no allegation that it refused to approve a move that the correctional institution would otherwise have carried out." The circuit court subsequently entered a final order reflecting these rulings.

This appeal followed.

## II. ANALYSIS

On appeal, we review de novo a circuit court's judgment sustaining a demurrer, "accept[ing] as true all factual allegations expressly pleaded in the complaint and interpret[ing] those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018).

### A. Grounds for Sustaining Demurrer

Drew argues that the circuit court erred in sustaining Armor's demurrer based on grounds raised by the circuit court but not raised by Armor. He argues that the circuit court improperly distinguished his case from our Supreme Court's decision in *Quisenberry* when Armor itself did not specifically address *Quisenberry* in its demurrer.

Code § 8.01-273(A) provides that in considering a demurrer, "[n]o grounds other than those stated specifically in the demurrer shall be considered by the court." Armor's demurrer asserted that Drew's complaint "failed to state sufficient facts upon which the relief sought can be granted" because it "fail[ed] to set forth any facts stating the duty owed to [Drew] or the basis of any duty owed to [Drew]." Drew subsequently cited *Quisenberry* in his response to the demurrer. In its letter opinion, the circuit court found that *Quisenberry* did not support Drew's position and instead, under the principles of that case, that Armor had no duty to prevent transmission of COVID-19 to Drew.

We find no merit in Drew's argument that the court sustained Armor's demurrer based on grounds not raised in its demurrer. Armor's demurrer alleged that Drew's complaint should be dismissed because it did not state a duty owed to Drew, and the circuit court sustained the

- 5 -

demurrer on the same basis—that Armor owed no legal duty to Drew. Thus, even though the circuit court considered a case not raised by Armor in its demurrer, it sustained the demurrer on the no-duty ground specifically raised by Armor.

### B. Use of Incorrect Legal Standard in Evaluating the Demurrer

Drew also argues that the circuit court erred in sustaining Armor's demurrer because it utilized an incorrect legal standard in evaluating the demurrer, reviewing the evidentiary strength of the facts alleged rather than only considering whether he properly pled a legal duty owed to him. He notes that the court distinguished the instant case from *Quisenberry*, reasoning that unlike the employer in that case, Armor did not create COVID-19 or the housing arrangements that promoted the transmission of the virus. Drew contends that, regardless of whether Armor was in fact responsible for creating COVID-19 or the housing arrangements that promoted the transmission of the virus, the court's consideration of these facts was improper because it required Drew to prove facts without allowing him to present evidence. He asserts that in considering Armor's demurrer, the only proper consideration for the court to rule on was whether his complaint stated a valid basis for a legal duty owed to him by Armor.[3]

A demurrer "tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 357 (2010) (quoting *Glazebrook v. Bd. of Supervisors of Spotsylvania Cnty.*, 266 Va. 550, 554 (2003)). "The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a bill of complaint,

---

[3] In ruling on Armor's demurrer, the circuit court also considered documents other than the initial complaint, including Drew's proposed amended complaint and his motion to reconsider. Armor did not challenge the court's use of these documents below; therefore, we evaluate whether the court erred in sustaining the demurrer based on the allegations included in all the documents considered by the court. *See F.E. v. G.F.M.*, 32 Va. App. 846, 853 n.2 (2000) (finding that in an appeal of a demurrer that was sustained, the appellate court could consider additional facts other than those in the petition because the defendant "posed no objection to the court's consideration of these facts at the trial level").

but only may determine whether the factual allegations of the bill of complaint are sufficient to state a cause of action." *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors of Charles City Cnty.*, 259 Va. 419, 427 (2000). In evaluating a demurrer, the appellate court "consider[s] as admitted the facts expressly alleged and those which fairly can be viewed as impliedly alleged or reasonably inferred from the facts alleged." *Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)).

We conclude that the circuit court did not improperly consider the merits of the facts alleged in sustaining Armor's demurrer. Here, it is clear from the court's letter opinions that it did not evaluate the strength of the evidence. Instead, the court found that Drew's allegations, if accepted as true, did not prove the existence of a legal duty owed to him by Armor based on the principles articulated in *Quisenberry*. The court sustained Armor's demurrer because Drew did not allege that Armor created the hazards in this case, namely COVID-19 and the housing conditions in the prison. This determination was not a consideration of the evidentiary weight of Drew's allegations, but rather, a legal conclusion based on the facts alleged by Drew.[4]

---

[4] In his opening brief, Drew also asserts that, because the circuit court considered the factual strength of his allegations, it failed to rule on whether he "stated a valid cause of action." He asks this Court "to make this determination in the first place." We first note that we reject Drew's assertion, because the court did rule on whether he stated a cause of action, explaining in its letter opinions that he had failed to do so. Further, on appeal, we cannot address whether the court erred in ruling that Drew failed to allege a duty owed to him because this argument is not encompassed in his assignment of error. His assignment of error states: "The Chesapeake Circuit Court erred in sustaining Armor's demurrer by relying on the strength of proof of facts rather than pure questions of law in violation of well established Virginia Supreme Court precedent." Drew's assignment of error does not assign error to the court's ruling on the lack of duty alleged, but rather only challenges the court's alleged consideration of the strength of the facts alleged. *See* Rule 5A:20(c); *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 698 n.1 (2012) (noting that "[u]nder our Rules, we only address arguments encompassed by an appellant's express 'assignment[s] of error' in his brief").

## III.  CONCLUSION

For the reasons stated above, we hold that the circuit court did not err in sustaining Armor's demurrer and dismissing Drew's complaint.  Accordingly, we affirm the decision of the circuit court.

*Affirmed.*